**Israel Sein SOTO**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

**No. Civ. 617-68.**

United States District Court, D. Puerto Rico.

Feb. 11, 1970.

Miguel M. Cancio, Aguadilla, P. R., for plaintiff.

Candita R. Orlandi, Asst. U. S. Atty., San Juan, P. R., for defendant.

## ORDER AND MEMORANDUM OPINION

FERNANDEZ-BADILLO, District Judge.

This civil action filed by Social Security claimant Israel Sein Soto seeks judicial review of the final decision of the Secretary of Health, Education and Welfare by which a period of disability and disability insurance benefits under 42 U.S.C. §§ 416(i) and 423 were denied. In his request of November 16, 1967 for a hearing before an examiner plaintiff gave the following as reasons for disagreeing with the initial determination made by the agency on his claim: "I cannot work because my condition have been aggravated by bronchial asthma, ulcers, a pulmonary condition and abscessed left foot. I can't work because of my frequent hospitalizations" (Tr. p. 20). In the earlier application for benefits he had briefly described his disabling impairment as bronchial asthma with no further accompanying conditions. This man meets the special earnings requirement through June 30, 1970 and the date of onset has been fixed as September 1966. The Court is bound to examine the whole record to conclude whether the Secretary's denial of benefits is supported by substantial evidence. If the administrative findings are based on substantial evidence I am compelled to affirm without further inquiry.

Claimant is a young man 34 years old who has the equivalent of a high school education. He lives with his wife and four children in a seven room, one story house of their own. He served ten months in the Armed Forces and was discharged "because of sickness * * * ulcer and the asthma" (Tr. p. 43). At the time of the hearing he was receiving monthly payments for disability compensation from the Veterans Administration which awarded him approximately $380. monthly for service-connected conditions of asthma and duodenal ulcer, considered by their standards to be 100% disabling when combined.

Although feeling that his sleep wasn't steady Mr. Sein indicated that he usually went to bed around ten at night and slept during the day until lunch time taking an additional hour off for an afternoon siesta (Tr. p. 69). He spends his day playing dominoes and cards, watching television, listening to the radio, goes fishing occasionally and attends church meetings twice a week. He takes care of all his personal needs without help except for shaving which is done at the barber shop or by his wife and daughter.

Plaintiff has admittedly made no efforts to seek employment with the exception of an attempt to work at a bank in his hometown,[1] allegedly because he has been hospitalized most of the time (Tr. p. 62). After much speculation as to his inability to hold a job, Mr. Sein expressed his hope that Vocational Rehabilitation might find employment for him but immediately went on to say that: "If I go to work for Vocational Rehabilitation, the Veterans Administration might not—might cut off the compensation" (Tr. p. 103). This claimant has an extensive and varied work history both in the mainland and in Puerto Rico which ranges from eyelet machine operator to construction foreman and guard supervisor.

At the hearing he spoke of his lesser infirmities admitting that a duodenal ulcer was under control and simply treated by taking Gelusil. No claim of disability was made on account of the loss of two fingertips in 1953 for which he received $6,000 in compensation. Both the medical evidence and the testimony reveal that Mr. Sein's major impairment is bronchial asthma which set on as episodes of wheezing several months before applying for benefits. Dr. Porrata, specialist in pulmonary diseases, described it as "recent asthma, probably due to dust allergy." The only witness for

---

1. Applicant stated that he was turned down because "the bank was all filled up * * * there was no possibility" (Tr. p. 65).

claimant, Mr. César A. Quiñones, field investigator for the Social Security Administration and a personal friend of plaintiff, told of asthma attacks characterized by wheezing spells and shortness of breath once or twice a month. He stated that three or four days before the hearing claimant was wheezing terribly and commented: "I don't know why he's looking so fine today" (Tr. p. 78). In a report of contact made on October 6, 1967 Quiñones indicated that: "His work experience is limited to hard strenuous labor exposed to dust and climate changes. He obviously can no longer perform in this kind of work and, most probably, in no other work." Despite this statement when asked if he was aware of Mr. Sein's extensive and varied work history, the witness answered that he didn't have a thorough idea of plaintiff's work (Tr. p. 84).

There are two medical reports of his personal physician, Dr. Alberto L. Folch, a general practitioner who made a recommendation of 100% disability in his March 22, 1967 report. Said report briefly recites the patient's complaints and a diagnosis of pneumoconiosis without mentioning any further data or laboratory studies. A second examination by Dr. Folch on June 14, 1967 indicates that an X-ray of the chest revealed a diagnosis of pneumoconiosis "most probably due to dust" (Tr. p. 157).

The hospital records of Susoni Clinic signed by Dr. Jackie Cocker, general practitioner, show that plaintiff was admitted on March 8, 1967 because of exacerbation of dyspnea and discharged as improved twenty two days later. Nearly a month later he was again examined by Dr. Cocker who reported that a chest plate and other laboratory studies including an electrocardiogram were negative.

Dr. José Luis Porrata, performed a complete physical examination upon the agency's request. Plaintiff's history revealed that he remained practically free of wheezing between episodes and there was dyspnea only on exertion if he handled heavy objects of a hundred pounds or more. On examination, he had minimal dyspnea after standard exercise. The doctor's impression was one of "(1) bronchial asthma, probably allergic, extrinsic, (2) no evidence of obstructive emphysema and (3) minimal bron spastic factor improving with Isuprel." At the time the asthma was found to be minimal but could worsen as to frequency and intensity without adequate therapy since the patient was very anxious. Improvement with the use of corticosteroids and broncodilators was anticipated. No work restrictions were placed on claimant other than the admonition that he "should not go back to dusty working conditions." On the contrary, it was indicated that with therapy plaintiff could tolerate well any type of effort.

The vocational expert related various occupations within claimant's residual abilities after ruling out work exacting physical strength and his former jobs in the tannery, steel mill and construction industry. Stating that he could engage in light or sedentary work in environments free of heat and dust, the consultant found that Seín-Soto could be a self-employed truck or taxi driver, car-rental clerk and other jobs requiring driving. As to supervising he could employ himself as a milk or newspaper route supervisor and doing various tasks in the shoe industry which were available in the local economy.

 The Court concludes on the basis of the medical evidence and the testimony adduced at the hearing that this man's impairment is not so severe as to preclude him from engaging in substantial gainful activity realistically viewed in the light of his age, education and work experience. Disability determinations of other agencies are to be weighed by the administrative officials but are in no way binding in reaching a determination of a claim made by an applicant who seeks the award of benefits under the Social Security Act. Hunley v. Cohen, 288 F.Supp. 537 (E.D.Tenn., 1968). Claimant in this case has failed to meet the burden required by social se-

curity standards in establishing a qualifying disability.[2]

There is substantial evidence in the record to support the examiner's finding that claimant's asthma flares up at times but nonetheless he is able to work the great majority of the days. His condition is improved by therapy and the evidence so holds. The record does not bear out the allegation made in claimant's application that he is hospitalized most of the time.[3] The witness who appeared for claimant testified at the hearing that he visited Seín-Soto twice at the hospital but he really couldn't state how many times plaintiff was hospitalized. His case summary at Hospital Dr. Susoni, Inc. only indicates a 22 day period of hospitalization in March 1967. Dr. Porrata's report states that two weeks afterward claimant was also hospitalized for five days.

■ Concerning the declarations of witness Quiñones at the hearing it is apparent that the examiner gave little weight to them. Credibility choices are for the examiner, not the reviewing court.

Accordingly, the Court believes that the plaintiff has failed to established the claim asserted and this being so the decision of the Secretary of Health, Education and Welfare must be affirmed.

It is so ordered.

2. See also Branham v. Gardner, 283 F. Supp. 293 (W.D.Va., 1968) where the plaintiff through suffering from a mild pulmonary impairment coupled with a chronic lumbosacral sprain was precluded from heavy work in dust-laden places but was still capable of doing light to moderate work.

3. Plaintiff's testimony at the hearing really boils down to hospitalization on two occasions. He referred more to regular treatment than to hospitalization. On page 66 of the transcript he stated and we quote:

"Since March of '67, I was hospitalized the first time at Susoni Hospital for twenty days. The second time, more or less, the second time, I was

hospitalized in Susoni Hospital for seven days. The third time, I went over, I came back the same day, because I did not want to stay in the hospital myself. Then I was—went over to the Veterans Administration for treatment, and they sent me back to the hospital for—and I stayed in the hospital for about four or five days. Then, I've been going for treatment regularly to the Veterans Administration. Last week Dr. Faulk had to put an injection in me, the mark is still showing, because of the asthma. I frequently have to be getting treatment and injections, and I have to walk around with the medicine and equipment with me."