Angela de la CRUZ SANCHEZ

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare.

Civ. A. No. 299–73.

United States District Court,
D. Puerto Rico.

Aug. 2, 1974.

Blas C. Herrero, Jr., Hato Rey, Puerto Rico, for plaintiff.

Jose A. Anglada, Asst. U.S. Atty., Old San Juan, Puerto Rico, for defendant.

---

* Chief Judge, United States District Court, District of Rhode Island, sitting by special designation.

1. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) provides, *inter alia*, that "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a

## OPINION

PETTINE, Chief Judge*

This is an action under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health, Education and Welfare denying Social Security benefits to the plaintiff. Plaintiff filed an application for disability benefits on June 25, 1970, asserting as her impairments thrombophlebitis due to poor circulation and alleging her total inability to pursue gainful employment since June 18, 1969. After denial of her application both initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge who, on November 29, 1972, found that plaintiff was not under a disability within the meaning of the Social Security Act. The Administrative Law Judge's decision became the final decision of the Secretary when it was approved by the Appeals Council on February 2, 1973.

The sole issue for this Court's determination is whether there is substantial evidence[1] in the record to support the decision of the Secretary that claimant was not under a disability within the meaning of the Social Security Act.

The critical statutory provision for purposes of this case is found in Section 223 of the Act, 42 U.S.C. § 423 as amended in 1967 which provides in pertinent part:

"(a)(1) Every individual who—

rehearing. *The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .*" (emphasis added).
"Substantial evidence" has been described as " . . . more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

(A) is insured for disability insurance benefits (as determined under subsection (c)(1) . . .),

(B) has not attained the age of sixty-five,

(C) has filed application for disability insurance benefits, and

(D) is under a disability (as defined in subsection (d) . . .)

shall be entitled to a disability insurance benefit . . . ending with the month preceding . . . the third month following the month in which his disability ceases."

\* \* \* \* \* \*

"(d)(1) The term 'disability' means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

. . .

\* \* \* \* \* \*

(2) For purposes of paragraph (1)(a)—

(A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

\* \* \* \* \* \*

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques."

\* \* \* \* \* \*

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical or other evidence of the existence thereof as the Secretary may require."

## FACTUAL BACKGROUND

The plaintiff is 47 years old and has a fifth grade education. Her former employment was as a kitchen helper in a school cafeteria for eleven years. Previous to that, plaintiff had been employed for approximately eight months performing work as a thread clipper and flag cleaner at a factory. She has been retired on a nonoccupational disability pension from the Employees Retirement System of the Commonwealth of Puerto Rico. The doctor for the Retirement System, Dr. Rafael Coca Mir, diagnosed plaintiff's ailments (as certified July 9, 1970):

1. arterial hypertension
2. varicose veins, moderate and severe, in both legs
3. osteoarthritis
4. anxiety and depression reaction.

Plaintiff's own physician, Dr. Rafael E. Castro, states in his medical report of November 25, 1970 that plaintiff has visited him on several occasions since February, 1968 until the date of the report. Dr. Castro reports that he has examined the plaintiff for a variety of conditions over a span of nearly three years, including phlebitis in the right leg and pain in her left leg, anxiety with depression reaction, edema of the legs, inguinal adenitis and anemia. Dr. Cas-

tro makes no remarks concerning the degree to which the conditions which he diagnosed are disabling to the plaintiff.

Several doctors examined this plaintiff at the request of the Social Security Administration. That medical evidence may be summarized as follows:

1. Dr. R. Arrillaga Torrens, a specialist in internal medicine, examined plaintiff on August 12, 1970, and reported plaintiff's complaints of swelling legs over five year period, lumbar pain and chills; that patient finds it difficult to be seated or to walk and feels a 'general malaise'. His clinical findings, however, revealed that her extremities and joints were 'not unusual, except for dilated veins near inner aspect right ankle.' Blood pressure was reported at 140/84, pulse at 84 and electrocardiogram within normal limits. Her appearance was reported as 'not unusual, gets up and walks well. Seems well oriented.' Under 'impression' the doctor concludes 'probable intermittent attacks of filaria, right leg.' (Tr. 99–100).

2. Dr. Pedro J. Rullán, a general surgeon, examined plaintiff in March, 1971 and reported as follows:

"Peripheral vascular evaluation on the above patient reveals the following results: All the pulses are present and equal. The color and hair distribution of lower extremities is normal. There is no blanching on elevation and there is no rubor or venous filling on dependency. There are several areas of capillary dilation in both lower extremities. There is no pain on elevation or dependency of the legs. There are no ulcerations present. There is minimal edema of the right leg and foot. There is no functional disability or gangrene. The condition of both lower extremities is fairly good and so is her general health.

Impression: Chronic recurrent tropical lymphangitis.

Recommendations: There is no surgical treatment indicated. The patient should be protected by weekly injections of bicillin 1.2 m.

Prognosis: Fairly good." (Tr. 107).

3. Dr. Juan Llompart, an orthopedic surgeon, examined plaintiff on January 17, 1972 and reports that the plaintiff complains of low back pain and swelling in both legs. His orthopedic examination revealed a well developed woman who walks with good posture and balance. She had motion in her lumbosacral region from an erect position with flexion 60°, extension 30°, rotation and bending right and left, 30°. He described the edema of the right leg as 'minimal' and x-rays of the lumbosacral region showed no abnormalities. Dr. Llompart's opinion was as follows:

"This woman's main impairment is related to both leg and feet with the diagnosis already made by Dr. Rullán as mentioned before.

Her ability to ambulate is not impaired within limited distances. Her ability to stoop, bend, kneel, push and pull as to be expected on a woman of her age are not impaired.

Her ability to lift objects of adequate weight for her age and sex is not impaired.

In regards to the low back, I can find only her subjective complaints." (Tr. 109).

4. Finally, a psychiatric evaluation of plaintiff was performed by Dr. Rafael Aguayo Disdier on March 29, 1972. Plaintiff was diagnosed by Dr. Aguayo in his narrative report:

"Anxiety Neurosis, mild.

Comments: Mrs. de la Cruz has a long history of phlebitis, with an exacerbation from time to time which causes her some anxiety. Her major complaint is organic.

The patient has the ability to care for personal needs. The interpersonal relationships of this patient is good. There is no a degree of dependency and need for supervision.

The patient could profit by therapy and has the ability to handle funds." (Tr. 111).

In addition, Dr. Aguayo commented by way of a form questionnaire that plaintiff had no impairment in her ability to relate to others and was rated 'good' in her ability to perform work requiring frequent contact with other persons. (Tr. 112).

Plaintiff testified that she has been hospitalized on two occasions for her leg condition since June 1969, once in Puerto Rico and once in New York. She complains that the pain in her legs has affected her knees, brain and vision and that the pain is such that "I can hardly walk, nor can I remain sitting for long." (Tr. 45). Because of her condition, plaintiff is of the opinion that she is unable to perform any type of gainful employment (Tr. 47). She testified that her daughter must perform the household chores (Tr. 48), that she has not sought employment since June 1969 (Tr. 42), but that subsequent to June 1969 she tried to take care of children for a fee but had to discontinue after about three weeks because she became ill. (Tr. 44).

The Government introduced a vocational expert at the hearing, Paul N. Senior. He testified in response to a hypothetical question put to him by the Administrative Law Judge that based upon considerations of physical condition and vocational ability, there were numerous jobs in the Puerto Rican economy that could be performed by a person of plaintiff's age, education and physical capacities as indicated by the medical reports. The expert mentioned specifically about 330 jobs in the laundry and 6000 jobs in the garment industry (e. g., inspector, clipper, brusher). These jobs, according to the expert, do not require prolonged standing or lifting of heavy objects and that an employee in such jobs may indeed change from a standing to a sitting position intermittently throughout the work day. The vocational expert also testified that the Vocational Rehabilitation Service could provide placement services and medical attention and supplies free of charge.

It is true that the vocational expert admitted that if the plaintiff's subjective symptomology were accepted as true, she would be unable to perform the jobs to which he referred. However, it is clear that based on the objective medical records and findings and the vocational background of the plaintiff, it was the expert's opinion that plaintiff retained a residual capacity to perform any number of light and sedentary occupations in the Puerto Rican economy.

The Administrative Law Judge, based on the record, found:

"An evaluation of the medical evidence is indicative of the fact that although the claimant has an impairment of her lower extremities which would impede her ability to utilize them fully in the performance of work in a school lunch room, which is medium to heavy in nature and which would require prolonged walk, lifting, and standing, that this would not impede her ability to utilize them in the performance of light or sedentary work activities. The claimant also has a mild anxiety neurosis but her thinking ability has not been affected and she is able to think in a clear, coherent manner, and her mental condition should not affect her ability to work. The claimant's physical and mental impairments have not led to any deterioration which would make her unable to engage in the work activities recommended by a vocational expert at the hearing, and consequently it must be concluded that the claimant does have the physical and mental abilities to engage in substantial gainful work activities at the present time." (Tr. 13).

This Court holds that the findings of the Administrative Law Judge and the final decision of the Secretary denying disability benefits to plaintiff are supported by substantial evidence.

## DISCUSSION

■ The mere fact that plaintiff was previously certified disabled by the Commonwealth of Puerto Rico is not dispositive as to the Secretary's determination of disability Section 223 of the Act. While this factor should receive some consideration by the Secretary, De Gracia v. Secretary of Health, Education and Welfare, 248 F.Supp. 522, 527 (D. P.R.1966), the Secretary is entitled to make his own independent finding of disability under Section 223 and the evidence before him. Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968); Gee v. Celebrezze, 355 F.2d 849 (7th Cir. 1966); Soto v. Secretary of Health, Education and Welfare, 308 F.Supp. 603 (D.P.R.1970).

■ The Administrative Law Judge did find that claimant had met her burden of proving inability to return to her job as a kitchen helper and, therefore, the burden devolved upon the defendant to show that there was work available which the plaintiff could perform. Hernandez v. Weinberger, 493 F.2d 1120 (1st Cir. 1974).

■ The vocational expert who testified as to the availability of jobs was correct in basing his opinion on the objective evidence in the record as to plaintiff's age, education, work experience and physical and mental condition. Alternatively, the expert stated in effect that if plaintiff's subjective symptomology were taken into account, his conclusions as to available jobs would be different. It was, therefore, the duty of the Administrative Law Judge to weigh the plaintiff's subjective testimony as against the medical findings in evidence and reach a conclusion. Certainly there was substantial medical and clinical evidence to support a finding that claimant was not disabled within the meaning of the Act. While the examiner is not free to completely disregard the subjective symptoms of a claimant, see DePaepe v. Richardson, 464 F.2d 92 (5th Cir. 1972), it was not error for the examiner to reject the subjective testimony of the claimant in the light of other evidence. As stated in Reyes Robles v. Finch, 409 F.2d 84, 87 (1st Cir. 1969):

"It is apparent from the district court's second opinion that it bottomed its finding regarding recent deterioration on the uncontradicted testimony of the appellee as aided by the report of Dr. Portalatin. This assumes, however, that the Secretary was bound to accept as credible the almost entirely subjective testimony of appellee. While the Secretary could have accepted such testimony, he was not obliged to do so. Indeed if a claimant could, as a matter of law, overcome the effect of what would otherwise be substantial evidence of continued ability to work by his own testimony as to his condition, the Secretary would rarely if ever be justified in denying benefits." See Kirkland v. Weinberger, 480 F.2d 46 (5th Cir.), cert. denied, 414 U.S. 913, 94 S. Ct. 255, 38 L.Ed.2d 155 (1973); Dvorak v. Celebrezze, 345 F.2d 894 (10th Cir. 1965); Selewich v. Finch, 312 F. Supp. 191, 195 (D.Mass.1969).

Furthermore, the Administrative Law Judge did have the opportunity to observe the claimant during the course of the hearing, and he observed *inter alia* that she "was able to ambulate well around the hearing room, and to indicate excellent posture, balance, and ease of movement." (Tr. 14).

Of course, if there is substantial evidence to support the Secretary's findings I must affirm, even though had this Court heard the same evidence *de novo* it might have reached a different decision. *See* Walters v. Gardner, 397 F.2d 89, 90–91 (6th Cir. 1968). As the First Circuit has said, ". . . as to the scope of court review, 'substantial evidence' is a stringent limitation." Reyes Robles v. Finch, *supra* at 86.

The final decision of the Secretary is affirmed. Judgment is hereby entered for the defendant.

Order accordingly.