Lucy SELEWICH, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 68–158–M.

United States District Court
D. Massachusetts.

Dec. 31, 1969.

Burton G. Penn, Boston, Mass., for plaintiff.

Herbert F. Travers, Jr., U. S. Atty., Thomas P. O'Connor, Asst. U. S. Atty., Dept. of Justice, Boston, Mass., for defendant.

## MEMORANDUM

FRANK J. MURRAY, District Judge.

This action is brought under Section 205(g) of the Social Security Act (Act), 42 U.S.C. § 405(g) (Supp. III 1967), for review of a final decision of the Secretary of Health, Education, and Welfare (Secretary). In accordance with the statute, the Secretary has filed as part of his answer a certified copy of the transcript (TR) of the record including the evidence upon which the findings and decision are based. Defendant has moved for summary judgment and both parties argued the motion before this court.

On September 7, 1966, plaintiff filed an application for establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i) (Supp. III 1967), and for entitlement to disability insurance benefits under § 223 of the Act, 42 U.S.C. § 423 (Supp. III 1967). Plaintiff alleged that she was disabled within the meaning of the Act on June 30, 1950, the last day on which plaintiff met the insured status requirement of the Act. The Social Security Administration denied this application on November 17, 1966 and, upon plaintiff's request for reconsideration, affirmed its denial on January 26, 1967. Plaintiff then requested a hearing before a hearing examiner and one was held on May 24, 1967, at which plaintiff appeared without counsel and offered her own testimony. The hearing was subsequently reopened on August 24, 1967 by the hearing examiner for the sole purpose of receiving in evidence certain medical records. The record includes medical and other documentary evidence relative to plaintiff's application.

On August 29, 1967 the examiner rendered a decision that plaintiff is not entitled to a period of disability or to disability insurance benefits under the provisions of sections 216(i) and 223, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, in effect prior to the Social Security Amendments of 1965 or as amended thereby.[1] In reaching

---

1. The 1965 Amendments to the Social Security Act changed the definition of the term "disability". Prior to the 1965 Amendments, "disability" was defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration, or (B) blindness; and the term 'blindness' [meant] central visual acuity of 5/200 or less in the better eye with the use of a correcting lens. * * *" 42 U.S.C. §§ 416(i) (1) (A) and (B), 423(c) (2) (1964). The 1965 Amendments fixed a minimum period of disability of twelve months defining "disability" as the "inability to engage in any substantial gainful activity by reason of * * * any * * * impairment which can be expected to result in death or has lasted or can be expected to

this decision the examiner made certain findings and rulings which may be summarized as follows:

"The claimant's chief impairment is to her vision" which "did not prevent her from performing the kind of work she had done in the past at any time on or before June 30, 1950".

"The claimant had other medical conditions" which "did not, either singly or in combination with the claimant's visual limitations, prevent her from returning to her regular work prior to June 30, 1950".

The claimant on or before June 30, 1950 was "not prevented from engaging in substantial gainful activity by blindness or by any medically determinable impairment which could be expected to result in death or: A. [t]o be of long-continued and indefinite duration, or B. [t]o last for a continuous period of not less than 12 months".

"The claimant was not under a 'disability' * * * at or any time prior to June 30, 1950, as [that term is] defined in the Act * * * prior to or after the * * * [a]mendments of 1965 * * *."

(TR p. 10).

 "Disability" under the Act is defined to include blindness, and the term "blindness" means "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens". 42 U.S.C. §§ 416(i) (1) (B), 423(d) (1) (B).[2] The evidence is that her vision in 1937 was 20/70 right eye, 20/50 left eye, and that she wore glasses which appeared satisfactory. In 1938 new glasses corrected her vision to 20/50 binocularly. The next record relates to 1952 when she was at the Orthopedic Clinic

last for a continuous period of not less than 12 months * * *." 42 U.S.C. § 416(i) (1) (A), 423(d) (1) (A) (Supp. III 1967). The Secretary's decision became final on December 19, 1967, and thus it would appear that the more liberal 1965 definitions of "disability" are applicable here. The 1968 Amendments to the Social Security Act changed the "blindness" portion of the definition of "disability" to mean "central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. * * *" 42 U.S.C. §§ 416(i) (1) (B), 423(d) (1) (B) (Supp. IV 1969). Section 172(c) of Pub.L. No. 90–248, 81 Stat. 821 (1968) provides that the 1968 Amendment "shall be effective with respect to benefits under section 223 of the Social Security Act [42 U.S.C. § 423] for months after January 1968 based on applications filed after the date of enactment of this Act and with respect to disability determinations under section 216 (i) of the Social Security Act [42 U.S.C. § 416(i)] based on applications filed after the date of enactment of this Act." In contrast, section 158(e) of Pub.L. No. 90–248, 81 Stat. 821 (1968) provides that the amendments made to section 223 of the Social Security Act (42 U.S.C. § 423) "shall be effective with respect to applications for disability insurance benefits * * * and for disability determinations under section 216(i) [42 U.S.C. § 416(i)] * * * filed—

* * * * *

"(2) before the month in which this Act is enacted if the applicant has not died before such month and if—

* * * * *

"(B) the notice [of the final decision of the Secretary] has been * * * given before such month but a civil action with respect to such final decision is commenced under section 205 (g) of the Social Security Act [42 U.S.C. § 405(g)] (whether before, in or after such month) and the decision in such civil action has not become final before such month."

The applicable portion of section 223 does not include the new definition of "blindness" and, thus, that portion of the 1968 Amendment liberalizing the "disability" definition may not be considered in this case. Moreover, the court perceives no advantage to the plaintiff at this point in the proceedings resulting from a consideration of the "blindness" portion of the 1968 Amendment of section 223.

2. *See* note 1, *supra.* 20 C.F.R. § 404.1501(b) (1) (ii), 33 F.R. 11749, August 20, 1968, also defines "blindness" for "disability" purposes and applies the liberal 20/200 visual acuity criterion to those applications filed after January 2, 1968. For "disability" interpretation, "blindness" as defined in 20 C.F.R. § 404.1501 (b) (1) (ii), 33 F.R. 11749, August 20, 1968, and "statutory blindness" are interchangeable.

of the Massachusetts General Hospital. She was there described as "blind in her right eye and almost in her left eye". She was seen that year by Albert E. Sloane, M.D., a qualified ophthalmologist, who described her vision as 20/50 in the better eye. Doctor Sloane saw her on occasions afterward, and in March 1967 expressed the view "[t]his patient is unable to work since 1949".[3] Viewing the evidence most favorably to plaintiff, the examiner's finding that plaintiff was not "blind" on or before June 30, 1950 within the meaning of the Act is supported by substantial evidence.

 But the examiner's finding that her condition did not "prevent her from returning to her regular work prior to June 30, 1950," and his other findings dependent thereon require careful examination. The plaintiff, of course, has the burden of establishing that she had on or before June 30, 1950 become disabled by reason of an impairment or combination of impairments which could be expected to last for a continuous period of not less than twelve months. Ferguson v. Celebrezze, 232 F. Supp. 952, 956 (W.D. S.C. 1964). In sustaining that burden she is entitled to have the medical evidence presented to the examiner viewed by him and by this court in a light most favorable to her. Labee v. Cohen, 408 F.2d 998, 1000 (5th Cir. 1969). And where the evidence shows she was suffering from two or more medical impairments, including

visual impairment, determination of the question whether substantial evidence supports the decision of the Secretary must take account of all the medical evidence even though plaintiff, in the words of the examiner, asserted "simply that she could not return to work because she was blind". (TR p. 9). Such assertion, of course, may be weighed with all the medical evidence. But to accord it undue weight on this record would be to give a construction to the Act which was not intended, for prior decisions have made clear that the Act must be liberally construed to favor the granting of benefits wherever reasonable. See, e.g., Combs v. Gardner, 382 F.2d 949, 956 (6th Cir. 1967); Dean v. Flemming, 180 F.Supp. 553, 556 (E.D. Ky. 1959); Santagate v. Gardner, 293 F.Supp. 1284, 1288 (D.C. Mass. 1968). Findings on credibility and permissible inferences drawn from evidentiary facts are, of course, within the purview of the Secretary (See, e. g., Rodriguez v. Celebrezze, 349 F.2d 494, 495–496 (1st Cir. 1965)), and whenever the question of claimant's credibility is a critical factor in the Secretary's decision of the case the Secretary should make clear whether he believed or disbelieved the claimant. Santagate v. Gardner, supra at 1292.

Applying these principles in the review of the entire record, the court finds much of the evidence bearing on the reasons why plaintiff left her job and did not return to it came from plaintiff herself.[4] In addition to plain-

---

3. Conclusions by a physician as to disability are not determinative of the question since that fact is the issue to be decided by the Secretary. 20 C.F.R. § 404.1526 (Revised as of January 1, 1969), in part, provides that

"The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments."

4. The plaintiff testified she left Hood's "because my eyes started to bother me and I started to feel frightened", that

she saw a doctor in Dorchester whose name she did not recall, "because I just went to see him once", who told her "you are better off to stop working, because your eyes are getting very bad", that she then got frightened, that she did not stop work to have a baby, the baby was born February 1, 1947, that she had the help of her sisters and husband in taking care of the baby and the house after the birth, that she then "wasn't able to see too good" and the doctor told her she "had to be careful", that she was not then able to go to work and hold a job at that time, she was "more or less frightened of holding the baby in the [bath] because I [she] couldn't see too good", she did not

tiff's testimony there was medical evidence, apart from the visual impairment evidence, that the parturition in February 1947 was accompanied by complications including retention of placenta which was removed by surgery. In 1949 an appendectomy, and repair of cystocele and rectocele were performed. At the admission in 1949 the plaintiff "noticed" a pain in the back "which is worse in the morning and on stooping and lifting". (TR p. 78). In 1952 when the plaintiff was seen at the Orthopedic Clinic of the Massachusetts General Hospital, the examining physician's record reads as follows: "[plaintiff's] back pain has been annoying her for many years it has been much more severe the past 5 years since the birth of her only son. * * * All of her pain seems to be centered at the level of L5 S1 in the mid line with radiation on both sides directly laterally. It is a chronic ache which prevents her activity but also bothers her when she is resting". The clinical examination revealed "she is ½ inch short on the left as compared to the right from Anteri or superior spine to medial malleolus. She has the corresponding pelvic tilt and a spinal curvature which is accentuated by poor posture of the shoulders and elevation of her left shoulder". X-rays confirmed the clinical findings. Corrective procedures and medicines were prescribed. (TR pp. 82–83).

The evidence is uncontradicted that the plaintiff did not work between 1945 and June 30, 1950. Considering the history of her visual impairment, which appears confirmed by the various clinical examinations and the opinion of Doctor Sloane, there is no evidence to show that she was able to continue doing the job of inspecting parachutes. The examiner may not have believed the plaintiff as to the reasons why she left and did not return,[5] but it is his duty to make such disbelief, if he acted upon it, clear upon the record. Moreover, the examiner expressed incredulity of plaintiff's testimony (TR p. 34), resting his expressed doubts on the assumed existence at Hood's of a job operation involving parachute folding at the time plaintiff stopped working in 1945. But there was a total absence of any testimony of such a job operation. The examiner could not properly take notice of any such job outside the testimony before him, and could not properly assume the existence of one. *See, e. g.,* Rosin v. Sec. of Health, Education, and Welfare, 379 F.2d 189, 195 (9th Cir. 1967), and cases cited therein. Additionally, any finding that plaintiff was not prevented from engaging in substantial gainful activity by her then condition which assumed the existence of any parachute folding job at Hood's cannot lawfully stand. Huffman v. Gardner, 292 F.Supp. 331 (D.C. Or. 1968). Furthermore, there is no testimony what-

look for other work when she left Hood's, at that time her husband was able to support the family, she left work because her eyes were bothering her, she never said she left the job because it ended, the work was still going on, she could not have kept that job if she wanted to "because my eyes weren't feeling right. I was feeling a strain on them", she did not ask to be transferred to other work at Hood's, she never told Hood's about her eyes, she "just stopped work because my [her] eyes were bothering me [her]". Hearing Examiner: "As you think back about it, what do you feel is the important thing that tells me that you are unable to work, or that you were blind, on or before the middle of 1950—June 30, 1950? What is the most important thing as you see it?" Plaintiff: "Before 1950?" Hearing Examiner: "Yes: That's when you last met the earnings requirements for these purposes." Plaintiff: "Well, I can say my eyes were bothering me and I know I had a white spot in my eye, and my husband kept telling me to go to the doctor * * *." Hearing Examiner: "That of course was 1959?" * * * "We are talking about almost 10 years earlier." Plaintiff: "Well, like I says, my eyes were bothering me, and they do bother me. * * *" (TR pp. 20–36).

5. In his questions (TR pp. 32–33) the examiner strongly suggests that she left (a) to have a baby, and (b) when the job ended.

soever of plaintiff's capabilities, predicated upon her age, education, training, experience, and mental and physical attainments, to engage in any substantial gainful activity, at the time she left Hood's, other than the job she filled. There is no finding her condition at the time was such that she could have continued in the job she left. On this record (a) where plaintiff's testimony is uncontradicted that she left and could not return to the job because of medical impairments, and (b) where it is not clearly shown the examiner did not believe that testimony, the Government has the burden of showing plaintiff had the capabilities of engaging in other substantial gainful activity. It has not sustained that burden.

The motion of the defendant must be denied. However, because the hearing examiner may not have applied the law correctly and because it is not clear upon this record whether he believed or disbelieved plaintiff's testimony in certain important aspects, the question remains undecided whether there was substantial evidence to support his finding that plaintiff was not under a disability at or any time prior to June 30, 1950, within the meaning of the Act. The case is, therefore, remanded to the Secretary to determine whether plaintiff's medically determinable physical or mental impairments either singly or in combination rendered her disabled within the meaning of the Act. The determination necessarily involves resolution of two issues: (a) what the plaintiff could do, and (b) what employment opportunities were for the plaintiff at that time, taking into consideration plaintiff's age, education, intelligence, emotional condition and environment. Since plaintiff's credibility concerning her ability to perform certain functions is a key factor in this case, the Secretary should make clear in his decision whether he believes or disbelieves plaintiff. Subjective evidence of pain must be considered in determining whether a claimant is disabled.

Defendant's motion is hereby denied. Under 42 U.S.C. § 405(g), the case is remanded to the Secretary for further consideration and action in accordance with this memorandum of decision.