Charles P. SMITH

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services.

No. 81–160–L.

United States District Court,
D. New Hampshire.

June 3, 1981.

Jeffry A. Schapira, Manchester, N. H., for plaintiff.

Helen J. Forsyth, Asst. U. S. Atty., Concord, N. H., for defendant.

## ORDER

LOUGHLIN, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to review a final determination of the Secretary of Health and Human Services denying plaintiff's application for disability insurance benefits.

Plaintiff filed an application for disability insurance benefits on August 30, 1979. An initial determination was made denying his request on July 26, 1979. Plaintiff filed a request for reconsideration on December 5, 1979. On reconsideration, the initial determination was upheld on December 28, 1979. Plaintiff requested a hearing before an Administrative Law Judge on March 18, 1980. The hearing took place on August 12, 1980.

The Administrative Law Judge rendered an opinion denying benefits on December 9, 1980. The opinion became the final decision of the Secretary when it was affirmed by the Appeals Council on February 4, 1981. The plaintiff then commenced a civil action in the U.S. District Court for a review of the hearing decision on March 23, 1981.

## THE ISSUE

The issue before this court is whether there is substantial evidence to support the finding of the Secretary that the plaintiff did not meet the disability requirements of the Social Security Act.

## THE APPLICABLE LAW

The plaintiff having met all other requirements of disability entitlement, this court must determine whether the plaintiff is disabled as defined in 42 U.S.C. § 423(d)(1)(A) where the term disability means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(2) provides that for purposes of the above quoted section one is disabled if:

> an individual ... shall be determined to be under a 'disability' only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. "Work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3)

FACTS

The plaintiff was 52 years old at the time of the hearing. His date of birth is May 13, 1928. He resides in Derry, New Hampshire with his wife of thirty-two years and his nineteen year old son. Plaintiff's son is a student and works during the summer months.

Plaintiff is a high school graduate and a Navy veteran with a total of 6½ years of active and reserve time. Plaintiff was a fire fighter instructor in the Navy. While in service, he attended Class A fire fighters school and received plumbing training. He attended a special six-week course at the Philadelphia Naval Shipyard in damage control training which is related to shipboard fire fighting while he was serving in the Naval Reserves.

Upon leaving the Navy, plaintiff began serving a five year plumbing apprenticeship under the Commonwealth of Massachusetts. He also joined the Hull, Massachusetts Fire Department. Plaintiff worked days at the Fire Department and went to night school for plumbing. Plaintiff is licensed in Massachusetts as a plumbing and heating contractor having completed an apprenticeship in plumbing and taken a Master's Exam in plumbing, pipe cleaning, and oil burner technician wire. He took courses on the advance code and estimating blueprint reading. In the early sixties, plaintiff started his own plumbing and heating business while remaining on the Fire Department. Plaintiff's vocational training, then, is basically plumbing, heating and firefighting.

Plaintiff last worked in 1971. At that time he was forced to retire from the Hull Fire Department with a disability retirement. He receives a disability pension from the Hull Fire Department. After he left the Fire Department, plaintiff attempt-

ed to do some plumbing work. He tried to do supervisory work as a master plumber directing men who were working with the plans. The job involved crawling through the job site and plaintiff was unable to withstand the work. He also could not work with the wrenches. Plaintiff gave the plumbing business to one of his older sons and has not been associated with it since 1972. Plaintiff met the special disability earnings requirement of the Social Security Act as of his alleged date of disability, September, 1972, and continued to meet it through June 30, 1977. It is plaintiff's contention that he suffers from severe degenerative disc disease and degenerative joint disease of the lumbar spine and that the condition was present on or before June 30, 1977.

At the hearing on August 12, 1980 plaintiff testified that he was initially injured while fighting a fire in 1958. At that time his back went out and he collapsed. He was placed under the care of Dr. Weiss and required treatment three times a week for eight weeks.

Plaintiff was subsequently injured while fighting a fire in 1968. At that time he was knocked unconscious and hurt his back. He was hospitalized for four or five days and spent another two to three weeks in a wheelchair. It was because of the pain in plaintiff's back and legs that he was ultimately forced to retire from the Fire Department.

Plaintiff testified that he is unable to stoop or bend over and that he cannot walk for more than a half hour without aching. He is only capable of standing for one-half to three-quarters of an hour before his back gives out with intense pain spreading down his legs and thighs. Plaintiff can sit in a straight-backed chair for one hour to one hour and a half after which time he experiences deep pain. He has difficulty climbing steps. Plaintiff testified he has difficulty lifting objects and that one of his major problems on the Fire Department was that he could not pick up and lift the hose. He stated, however, that he thought he could lift twenty-five pounds without back prob-

lems. Plaintiff cannot carry items, including his tool box, wrenches and cord. He stated he has no strength in his arms to push or pull things. Although he has a license, plaintiff cannot drive for even an hour.

These limitations on plaintiff's functional abilities existed on or before June 30, 1977 and continue today. He testified that his condition has not improved since June, 1977 but has gotten worse. A typical day prior to June of 1977 and today consists of arising at approximately 7:30 A.M. and cooking breakfast. During the day he may take one or two short walks and lie down during one or two periods. When he putters in the garden it is for no longer than thirty minutes because of the pain he experiences.

During the evening, he reads and watches some TV. While reading, he has to change positions. He can only sit in a chair for approximately a half hour before it's necessary for him to lie down. Plaintiff goes to bed at approximately 11:00 P.M., but because of pain in his back usually awakens around 2:30 A.M. and again at 5:00 A.M. He sleeps on boards between the mattresses.

Plaintiff no longer engages in any recreational or sport activities. He belongs to a veteran's club and the Massachusetts Fire Fighters Association, but does not attend the meetings. His sole weekly activity is attending Mass once a week. Plaintiff does not drink alcoholic beverages. He smokes approximately a pack of cigarettes a day.

Plaintiff has been examined and treated by Dr. Philip Terry, O.D. and most recently by Dr. William Kilgus, M.D.

Dr. Terry has treated him since 1960. Although he has previously received shots and medication for his condition, plaintiff testified that he was getting too dependent on the drugs so that presently he is not taking any pain killers.

Office notes of Dr. Terry indicate a long list of visits from April 6, 1960 to March 1, 1978. A diagnosis of spondylosis was made by Dr. Terry in 1960 when plaintiff was thirty-two years old. (Record at 104–107).

Records of Dr. Terry show an examination on June 23, 1964 and on July 6, 1964 which reported symptoms consistent with an uncompensated disc at the L4–L5 area and acute low back pain with radiating pain down the left leg. The diagnosis was an uncompensated disc at L4–5. It was noted that it was questionable at that time as to the possibility of a permanent disability. (Record at 110).

Notes of Dr. Terry dated December 20, 1973 indicate that plaintiff had a decompensating, degenerative disc disease at L4–5 and L5–S1. It was noted that plaintiff had an unstable low back prior to his injury on December 17, 1968. From December 19, 1968 to December, 1973, plaintiff was treated intermittently with oral and injectable steroid medication, bed rest, muscle relaxants and analgesics. Plaintiff also received prolotherapy, an injection of the ligaments around the joints with a proliferating solution for the purpose of stabilization of the joints. It was noted that plaintiff was retired by the Disability Retirement Board of the Hull Fire Department on July 17, 1973. (Record at 112–113).

An April 17, 1975 visit to Dr. Terry again indicated findings consistent with a decompensating degenerative disc disease L5–S1. Plaintiff saw Dr. Terry four times in 1974. In January, 1975 plaintiff began rehabilitation training in preparation for a return to work. On January 13, 1977 plaintiff received an injection from Dr. Terry. The diagnosis of Dr. Terry after an exam on February 16, 1978 was cervical degenerative arthritis with neurospaty to the left shoulder. The doctor saw plaintiff again on March 1, 1978. (Record at 114–118).

In a letter dated December 18, 1963, Dr. Terry stated:

Charles Smith first came to this office on June 6, 1960 with acute low back pain which he stated began 2 days previously. The usual conservative measures were employed and his condition cleared as expected.

He was again seen on May 2, 1963 with acute low back pain. He stated he had had many minor episodes of back pain

since his first visit. His present attack was of several months duration and getting worse.

X-rays taken at South Shore Hospital on February 15, 1962, were negative for bone disease or fracture.

Examination on May 2, 1963 disclosed symptoms of unstable low back and evidenced symptoms strongly suggestive of decompensating disc in the L4–L5 area.

Sclerotherapy was started on May 23, 1963, but was discontinued because of the work pressure of trying to maintain two jobs.

It was decided more expeditious to resume therapy when his work load was less, after the first of the year.

X-rays taken on March 13, 1964 of the lumbar spine and pelvis showed a slight to moderate narrowing of the L4–5 and L5–S1. (Record at 121).

X-rays again taken by Dr. Ross, on March 24, 1970 showed a moderate progression of the degenerative changes when compared with the previous study. There is further narrowing of the L4–5 and L5–S1 disc interspaces. There is slight further spurring of the vertebral bodies and flattening of the lumbar spine. The apophyseal joints are intact and no spondylolisthesis is apparent. The lumbo-sacral angle is within normal limits. There is calcification in the abdominal aorta.

AP view of the pelvis shows the sacroiliac and hip joints intact and the visualized osseous components of the pelvis to be unremarkable.

There is an ill-defined density in the left pelvis of uncertain significance. Whether this is a calculus, calcified node or artifact is uncertain and repeat study at some future date is suggested. (Record at 126).

The conclusion of Dr. Ross of x-rays of the lumbo-sacral spine taken on November 16, 1972 was degenerative arthritic changes with minimal progression since the previous study. (Record at 127).

An x-ray taken of plaintiff's right knee on July 29, 1977 showed a right knee joint effusion.

Letters written by Dr. Terry from June, 1972 through November 6, 1980 document a chronic low back condition which was progressively more disabling. In a letter dated February 26, 1973, Dr. Terry again noted his diagnosis of unstable low back, degenerative disc disease, L4–L5, and degenerative arthritis of the lumbar spine. (Record at 130). In his letter of November 6, 1980 Dr. Terry summarized his treatment of the plaintiff since 1961. He noticed that:

In 1969, Mr. Smith had a severe recurrence of lower back pain and was treated conservatively. However, over the next several years, the pain increasingly worsened, forcing him to retire from the fire department in 1974.

At that time, examination revealed that Mr. Smith had a very limited range of motion of the lumbo-sacral spine, accompanied by pain with extremes of motion. X-Ray examination revealed a significant narrowing of the L5 disc space with arthritic changes in the posterior joints of the lumbar spine.

Since 1974, his symptomology had progressively worsened and when I last examined Mr. Smith in 1978, I could find no improvement in his overall condition.

My diagnosis was and still is that since 1974, Mr. Smith was suffering from severe degenerative disc disease, accompanied by degenerative joint disease of the lumbar spine.

Any type of physical stress to his lower back, including sitting or standing in one position for any length of time aggravates Mr. Smith's condition. In addition, he could not do any activities which involves bending, lifting, stretching, reaching, or carrying.

You inquired as to Mr. Smith's condition on or before June 30, 1977. Certainly on that date, Mr. Smith's back disease prevented him from engaging in any substantial gainful activity. In fact, I would conclude that Mr. Smith's total disability began in 1974 when he retired from the fire department.

(Record at 141).

Plaintiff was examined by Dr. William Kilgus an orthopedic surgeon on November

15, 1979. In a letter dated November 16, 1979, Dr. Kilgus stated:

At the present time, he complains of persistent pain in his lower back aggravated by stress. Valsalva maneuver is positive for back and leg pain. Occasionally, he will complain of numbness and parasthesias in both lower extremities. Nocturnal pain and morning stiffness are significant. The application of local heat helps on a temporary basis.

Physical examination revealed a limited range of motion of the lumbo-sacral spine accompanied by pain on extremes of motion. Moderate paravetebral muscle spasm was noted in the lumbar region. Straight leg raising examination was negative bilaterally, and neurologically the patient was intact. Deep tendon reflexes were bilateral and equal, and no motor or sensory deficit was found. The patient walked with a slightly antalgic gait, and listed to the right side when standing. No muscle atrophy was found. Radiographic examination disclosed the presence of narrowing of the L5 disc space accompanied by arthritic changes in the posterior joints of the lumbar spine. In conclusion and as the result of the aforementioned findings, I feel that this patient is suffering from severe degenerative disc disease and degenerative joint disease of the lumbar spine.

I feel that his overall prognosis is only fair, and I would not expect any significant improvement in the future. I frankly feel that this patient is unable to engage in any type of substantial gainful activity. Certainly a permanent restriction would be that of performing any type of manual labor. Even a job which would require sitting would be an aggravating factor for this patient.

(Record at 136–137).

Dr. Kilgus again examined plaintiff on October 27, 1980 for persistent pain in his lower back:

There was persistent pain in the lower back radiating to both lower extremities. He also experienced some numbness. The patient also complained of some tran-

sient stiffness in his fingers, but no clear pattern could be identified. Any type of physical stress appeared to aggravate the symptomatology of the lower back.

Physical examination revealed a mild amount of paravertebral muscle spasm in the lumbar area accompanied by a fair range of motion of the lumbo-sacral spine. There was some pain on extremes of motion. Neurologically, however, the patient was intact.

Radiographs revealed narrowing of the fifth disc space in the lumbar spine with some arthritic changes present.

In conclusion and as the result of the aforementioned findings, I felt that this patient was still disabled from any type of work which would involve: bending, lifting, carrying or reaching. In substance, I felt that this patient is unable to engage in any type of substantial gainful employment.

(Record at 139).

Tests performed by the Division of Vocational Rehabilitation of the New Hampshire Department of Education showed plaintiff able to lift or carry and push or pull 10 to 20 pounds. Plaintiff's ability to climb or balance and stoop or kneel and crouch or crawl was found to be impaired. It was their determination that plaintiff was able to perform a full range of light work and most moderate work that does not include consistent heavy lifting. (Record at 134)

Plaintiff testified at the hearing that he tried vocational rehabilitation through the Massachusetts Rehabilitation Department. He went to classes to attempt to be a respiratory therapist but could not handle the studying. It was also hurting his back. (Record at 44–45).

In his decision issued on December 9, 1980, the Administrative Law Judge, (hereinafter ALJ) found the claimant to have degenerative joint disease of the lumbar spine with associated symptoms of moderate pain and discomfort. He determined, however, that although the orthopedic impairment causes the plaintiff some exertional limitation, it did not prevent him from performing sedentary work. The ALJ

determined that the plaintiff had the residual functional capacity to perform work related functions except for work involving heavy lifting, bending, stooping, or prolonged sitting, standing or walking on or before June 30, 1977. The ALJ determined that the plaintiff retained the residual functional capacity for at least sedentary work and that the claimant was not under a "disability" at any time through June 30, 1977. (Record at 14).

Plaintiff was represented at the hearing and throughout this appeal by Jeffry A. Schapira, Esq.

## FINDINGS OF FACT AND RULINGS OF LAW

 This court does not conduct a de novo determination as to whether plaintiff suffers from a disability as defined in the Act. Instead, this court has the limited function of determining whether there is substantial evidence to support the Secretary's decision. Substantial evidence has been defined as follows:

> "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". *Consolidated Edison Co. v. Labor Board*, 305 U.S. 197, 229 [59 S.Ct. 206, 217, 83 L.Ed. 126] "It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Labor Board v. U. S.*, [306 U.S.] 292, 300 [59 S.Ct. 501, 505, 83 L.Ed. 660]. This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. (Citation omitted.)

*Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

 In review, this court finds that plaintiff has sustained his initial burden of presenting a prima facie case of disability. *Hernandez v. Weinberger*, 493 F.2d 1120, 1122 (1st Cir. 1974); *Reyes Robles v. Finch*, 409 F.2d 84, 86 (1st Cir. 1969). *Centeno-*

*Rios v. Secretary of Health, Education and Welfare*, 312 F.Supp. 1330, 1332 (D.P.R., 1970). The evidence in the record supports plaintiff's position by establishing that he is unable to continue in his prior work by reason of his degenerative disc disease and degenerative joint disease of the lumbar spine which has lasted for more than one year. *Small v. Califano*, 565 F.2d 797 (1st Cir. 1977).

The ALJ concluded in his decision that plaintiff's multiple difficulties and resulting degenerative disc disease prevented him from returning to all of his former jobs. The ALJ also determined that the plaintiff's orthopedic problem in his lumbar spine prevented him from performing any type of work where he would be required to do any lifting, bending, stooping or prolonged sitting, standing or walking. (Record at 12).

 Once such a prima facie case has been made, the burden shifts to the Government to show that there is other work that the claimant is able to perform. *Hernandez v. Weinberger*, 493 F.2d 1120 (1st Cir. 1974); *Small v. Califano*, 565 F.2d 797 (1st Cir. 1977). There are four elements to be weighed in determining whether there is substantial evidence to support the Secretary's decision; (1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the claimant and corroborated by family and neighbors; and (4) the claimant's educational background, work history, and present age. *Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962). The Medical-Vocational Guidelines found at 20 C.F.R. Part 404 subpart P, Appendix 2, have been held to satisfy the Secretary's burden of demonstrating the existence of alternative work for a plaintiff who is unable to return to his past relevant jobs because of his exertional impairments. See *Stephens v. Harris*, 628 F.2d 1353 (5th Cir. 1980) at Footnote 4, p. 6; *Jones v. Harris*, [Jan. 1980–Sept. 1980 Transfer Binder] Unempl.

Ins. Rep. (CCH) ¶ 17,074 (E.D.Tenn.1980); *Dinapoli v. Califano,.* [Jan. 1980–Sept. 1980 Transfer Binder] Unempl. Ins. Rep. (CCH) ¶ 17,073 (E.D.Calif.1980). The Secretary carries his burden of proof by supporting with substantial evidence findings that claimant meets each criterion in a particular rule in Appendix 2. *Jones v. Harris, supra.*

In the instant case, the ALJ found that the medical evidence established that the plaintiff had degenerative disc disease which prevented him from returning to his former jobs as a fireman or plumber. The ALJ found, however, that the claimant had the residual functional capacity for sedentary work as defined by Section 404.1510(b) of Subpart P of Social Security Administration Regulations No. 4:

> *Sedentary Work.* Sedentary work entails lifting 10 pounds maximum and occasionally lifting or carrying such articles as dockets (e. g. files), ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The ALJ determined that Regulation 404.1513 and Rule 201.24 of Table No. 1 of Appendix 2 to Subpart P of Regulations No. 4 directed a finding that the claimant, considering his maximum sustained work capability, age, education and work experience be found "not disabled". It is clear that in order for a factual conclusion of disabled or not disabled the findings of fact made as to all factors must coincide with the criteria of the rule. It appears that rule 201.21 would actually be the rule applicable to plaintiff in this table since in 1977 plaintiff was age 49 and had attained a high school education. The ALJ found the plaintiff capable of sedentary work, a criteria of both Rule 201.24 and 201.21 of table No. 1. However, by definition to be considered capable of performing sedentary work one must be capable of sitting for a significant period. Plaintiff has been found by the ALJ to be unable to sit for prolonged periods. In his letter of November 16, 1979, Dr. Kilgus stated that "even a job which would require sitting would be an aggravating factor for this patient." (Record at 137). And plaintiff testified that he can only sit for one hour to one hour and thirty minutes and then it must be in a straight backed chair. Thus, given the lack of a full range of sedentary functional capacity, the Appendix 1 rules are not applicable.

It is also clear that the expert opinions of a treating physician as to the existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary. *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir. 1978); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38 (2d Cir. 1972). Plaintiff's doctor who has treated him for over twenty years found the plaintiff to be permanently disabled due to severe degenerative disc disease accompanied by degenerative joint disease of the lumbar spine, as did Dr. Kilgus who has treated him in recent years. These opinions have not been contradicted by substantial evidence to the contrary. While the reports of the Determination Service are in contradiction, it is clear that once it is determined that an impairment exists, the opinions of the treating physician are entitled to substantially greater weight than the impressions of a doctor who sees the claimant only once. *Hunley v. Califano,* 465 F.Supp. 65, 70 (E.D. Va.1979); *Allen v. Weinberger,* 552 F.2d 781 (7th Cir. 1977), *quoting from Selig v. Richardson,* 379 F.Supp. 594, 601 (E.D.N.Y. 1974).

The court finds that the Secretary has not met its burden to establish that considering claimant's age, education, work experience and impairment there are jobs which he could perform existing in the national economy. *Hernandez v. Weinberger,* 493 F.2d 1120, 1123 (1st Cir. 1974). The decision of the secretary is reversed.