Claudia DIONNE, Plaintiff,

v.

Margaret HECKLER, Secretary, U.S. Department of Health & Human Services, Defendant.

Civ. No. 82–0273 P.

United States District Court, D. Maine.

April 20, 1984.

Patrick N. McTeague, McTeague, Higbee, Libner, Reitman & Priest, Brunswick, Me., for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., for defendant.

## MEMORANDUM OF DECISION
## AND ORDER

GENE CARTER, District Judge.

This is an action under 42 U.S.C. §§ 405(g), 1383(c)(3) for review of the final decision of the Secretary of Health and Human Services terminating Plaintiff's disability benefits which she had been receiving pursuant to 42 U.S.C. §§ 416(i) and 423 since March 1973. Before review by the Secretary, benefits were denied to Plaintiff both by an Administrative Law Judge (ALJ) and by the Appeals Council, which reviews the decision of the ALJ and evidence submitted subsequent to the ALJ's determination. Plaintiff has exhausted all other administrative remedies.

Plaintiff began receiving Disability Insurance Benefits in March 1973 for a mental impairment diagnosed as a passive-aggressive personality with endogenous depression and accompanying colitis. Her disability benefits were terminated in June 1981 when it was determined by the Social Security Administration that Plaintiff became able to do substantial gainful activity in April 1981. Plaintiff's request for a hearing was filed December 29, 1981. Although her request was not filed within the "60 days after the date you receive notice" of termination as required by 20 C.F.R. § 404.909(a)(1), the ALJ determined that "good cause exist[ed] for the late filing." Tr. at 12. Substantively, the ALJ determined that Plaintiff's disability ceased in April 1981. Plaintiff then requested, and was denied, review by the Appeals Council, thereby rendering the ALJ's findings the final decision of the Secretary. Thereafter, Plaintiff sought review by this Court of the Secretary's decision, in accordance with 20 C.F.R. § 404.981, by filing a Complaint on September 24, 1982. The Secretary filed as part of her answer a certified copy of the transcript of the record, including evidence upon which the findings and conclusions were based. Plaintiff subsequently filed a Motion for Summary Judgment, and Defendant filed a Motion for an Order Affirming the Decision of the Secretary.

The standard of this Court's review is whether the determination made by the ALJ is supported by substantial evidence. 42 U.S.C. § 405(g); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). The determination must therefore be supported by "such relevant evidence as a reasonable mind might accept as adequate" to support the conclusions drawn. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In his consideration of the evidence to determine whether Plaintiff was disabled, the ALJ followed the procedure dictated by 20 C.F.R. § 404.1520. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1973. Next, the ALJ examined medical records and testimony presented by several treating physicians and one medical advisor and concluded that Plaintiff's non-exertional impairments were severe. The ALJ then resolved, based on the same medical evidence, that Plaintiff's impairment was not listed in, or equivalent to, the Listing of Impairments in 20 C.F.R. § 404 Subpart P, App. 1. After determining that Plaintiff also had no past relevant work, the ALJ examined evidence of Plaintiff's age, education and residual functional capacity. Because Plaintiff was successfully enrolled in nursing school to become a licensed practical nurse, the ALJ determined that Plaintiff had "clearly demonstrated a capability to perform substantial gainful work activity," Tr. at 14, was capable of performing "low stress type work activity," *id.*, and was therefore no longer disabled.

Plaintiff argues in her Motion for Summary Judgment that the ALJ's holding that Plaintiff is no longer disabled is unsupported by substantial evidence. Chiefly, Plaintiff contends that the ALJ ignored relevant evidence in reaching his conclusion.

Plaintiff correctly notes that the ALJ ignored the evidence of Plaintiff's psychophysiologically induced colitis in the record of his (hearing) decision. However, Plaintiff errs in assessing the impact of the

ALJ's omission. Plaintiff contends that the testimony regarding Plaintiff's colitis by Dr. Kamm, Plaintiff's treating psychiatrist, was uncontradicted and thus binding upon the ALJ. *Smith v. Schweiker*, 520 F.Supp. 27, 35 (D.N.H.1981). In fact, Dr. Kamm's testimony is neither overwhelmingly supportive of a finding that Plaintiff's colitis is severe and severely disabling, nor is his testimony uncontradicted. Where Dr. Kamm indicates in his testimony that he believes that taken together, "her personality disorder, these mood swings, and this bowel problem will again prevent [Plaintiff] from working," Tr. at 24, he nonetheless qualifies his assessment with the provision that Plaintiff will be prevented from working "at least in nursing." *Id.* Dr. Kamm also testified to his belief that Plaintiff had "a psychophysiologic disorder, that is the emotionally mediated colitis." Tr. at 31. However, when later asked by the ALJ which provisions under Appendix 1 § 12.04 "Listing of Impairments" Plaintiff's impairments satisfied, Dr. Kamm agreed that her impairments were embraced by §§ 12.04(A)(2) and (3) but did not mention § 12.04(A)(1) which encompasses psychophysiological disorders. Tr. at 33. In addition, Dr. Voss, the medical advisor, testified that Plaintiff "does not have severe colitis." Tr. at 161. Since it is well within the ALJ's province to determine the weight to be given to conflicting medical testimony, *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981), and since the evidence of the severity of Plaintiff's colitis was not overwhelmingly conclusive, the ALJ could properly have determined that Plaintiff's colitis was not severe.[1]

■ Plaintiff also argues that the ALJ's finding that Plaintiff is not disabled is unsupported by substantial evidence since it is contrary to the medical evidence in the record. The record reveals no foundation for Plaintiff's assertion.

Plaintiff contends that the "expert testimony of the treating physician should establish the Claimant's disability." Plaintiff's brief at 13. Indeed, Dr. Kamm did testify not only that he believed the Plaintiff to be totally disabled, but also that her disability was included in Appendix 1 §§ 12.04(A)(2), (3) and (B), thus automatically qualifying Plaintiff for disability benefits. Dr. Kamm's testimony was contradicted, however. Dr. Sattin, Plaintiff's treating psychologist, testified that since her hospitalization in the late spring of 1981, Plaintiff's condition had improved and was, at the time of the hearing, no longer severe. Tr. at 155. In addition, while Dr. Sattin testified that at the time of the hearing, he thought Plaintiff was still disabled, Tr. at 157, and that it would be "if'y," Tr. at 154, whether Plaintiff could do full time work, he also testified that if her success continued in nursing school, he would then encourage Plaintiff to try to work. Dr. Voss, the medical advisor, also contradicted Dr. Kamm's testimony. Although Dr. Voss concurred with Dr. Kamm's diagnosis of Plaintiff's endogenous depression and personality disorder, and with Dr. Sattin's assessment of Plaintiff's hysterical personality, Tr. at 159, Dr. Voss disagreed that Plaintiff's impairments were included in or equivalent to the listed impairments in 20 C.F.R. § 404 Subpart P, App. 1, § 12.04. Tr. at 161. Additionally, although he acknowledged that if Plaintiff had severe depression, she would be unable

---

1. At issue here is not merely the weight that the ALJ should have given to conflicting testimony regarding Plaintiff's colitis, but also whether the ALJ acted properly in omitting any reference at all to Plaintiff's colitis in his opinion. Since the ALJ found on the basis of Plaintiff's non-exertional impairments alone that she was severely impaired, the Court finds this omission to be excusable. Certainly consideration of Plaintiff's colitis only would have led the ALJ to conclude that Plaintiff was more, rather than less, severely impaired than he found on the basis of Plaintiff's non-exertional impairments. Since the *fact* of a disabling impairment is the issue here, rather than the *cause* of that impairment, *Combs v. Gardner*, 382 F.2d 949, 956 (6th Cir. 1967), where the ALJ did find as fact, based on the substantial evidence of claimant's mental state, that Plaintiff was severely impaired, whether he assessed that Plaintiff's colitis was a contributing cause of that impairment is immaterial.

to work, Dr. Voss felt that Plaintiff's depression at the time of the hearing appeared to be fairly well under control, and that in a specific type of supportive and gratifying environment, Plaintiff would be able to work. Tr. at 164.

Clearly, the ALJ's finding was not contrary to the medical evidence on the record. Although it is true that "expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary," *Smith v. Schweiker*, 520 F.Supp. 27, 35 (D.N.H.1981), in this instance substantial evidence to the contrary does exist. Not only does the medical advisor offer evidence differing from that of Dr. Kamm, but also, Dr. Sattin, Plaintiff's *treating* psychologist, disagrees with Dr. Kamm's assessment of Plaintiff's irreversible disability. The "resolution of conflicting evidence is solely within the province of the Secretary." *Gonzalez v. Richardson*, 455 F.2d 953, 954 (1st Cir.1972). Accordingly, this Court finds that the ALJ could have deemed that substantial medical evidence to contradict the treating physician's testimony existed, and therefore, that the ALJ was not bound by Dr. Kamm's testimony.

Although the ALJ was within his discretion in the weighing of the various medical testimonies, he erred in his finding that although Plaintiff was severely impaired, she was "nonetheless capable of performing work functions of a low stress type work activity," Tr. at 14, since, in reaching that conclusion, the ALJ ignored vital testimony of the vocational expert.

Title 20 C.F.R. 404.1520 dictates that once Plaintiff is determined to have a severe impairment, the ALJ must examine whether or not her impairment falls within those listed in Appendix 1 and thus qualifies automatically for disability benefits. If Plaintiff's impairment is not delineated in Appendix 1, the ALJ must determine next whether Plaintiff's impairment prevents her from doing any work she has done in the past. If claimant cannot do her past relevant work, or has no past relevant

work, the ALJ will consider the Plaintiff's age, education, past work experience and residual functional capacity to determine whether there is any work in the national economy that she can do. 20 C.F.R. § 404.1561. If there is no work that Plaintiff can do, she will be deemed disabled.

■ Plaintiff bears the burden of proving that her impairment prevents her from doing her previous work. *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 7 (1st Cir.1982). If she meets this burden, or if she has no past relevant work, 20 C.F.R. § 404.1565, the burden shifts to the Secretary to show that "there are other jobs in the economy that claimant can nonetheless perform." *Goodermote*, 690 F.2d at 7; *Vasquez v. Secretary of Health and Human Services*, 683 F.2d 1, 2 (1st Cir.1982); *Small v. Califano*, 565 F.2d 797, 800 (1st Cir.1977). "Such a showing is met by reliance on the testimony of a vocational expert, or by applying the relevant medical-vocational guidelines" in 20 C.F.R. § 404 Subpart P, App. 2. *Williford v. Secretary of Health and Human Services*, 550 F.Supp. 248, 251 (D. Ohio 1982). Since the ALJ determined that Plaintiff's impairment was non-exertional, he did not apply the Appendix 2 "Grid," which regularly supplants the role of the vocational expert in cases of exertional impairments, to Plaintiff's case. 20 C.F.R. § 404 Subpart P, App. 2, 200.00(e). *Torres v. Secretary of Health and Human Services*, 677 F.2d 167 (1st Cir.1982). Instead, the ALJ properly enlisted the services of a vocational expert to determine whether a job existed in the national economy which Plaintiff, given her age, education, work history and mental impairment could perform. 20 C.F.R. § 404.1561. Where the Secretary is required to meet the burden of proving that a job exists in the national economy, she cannot "establish specific vocational ability solely through medical evidence or by 'administrative notice.'" Rather, such evidence should be predicated upon the testimony of a vocational expert. *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir.1980).

Since "[t]he vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job," *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir.1981), Ms. Mullen, the vocational expert, examined Plaintiff's age, education, work history and her medical impairment. She determined that Plaintiff's twelfth grade education and her lack of past relevant work or transferrable skills would enable her to do only unskilled work. Ms. Mullen ultimately concluded, however, based on the evidence in the record of Plaintiff's impairment, that Plaintiff would be unable to work under the conditions present in unskilled jobs. Tr. at 165–166.

Since the "preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert ... [and] not 'mere intuition or conjecture by the administrative law judge,' " *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir.1981), the ALJ was bound to accord the testimony of the vocational expert great weight. Nonetheless, in the record of his decision, although the ALJ cites specifically both to the various physicians who testified at hearing and to their testimony, he makes no reference either to the fact of Ms. Mullen's presence or to the conclusions of her testimony. Instead, the ALJ totally ignores the vocational expert's assessment that there is no work in the national economy which Plaintiff could perform. In direct contravention of her testimony, the ALJ concludes that Plaintiff is "capable of performing work functions of a low stress type work activity," Tr. at 14, and is therefore not disabled. As in *Small v. Califano*, 565 F.2d 797, 801 (1st Cir.1977) where the court was "left guessing," the ALJ has similarly left this Court guessing as a result of his failure to make the "full and detailed findings in support of his ultimate conclusion" required to sustain his decision.

The requirement that "substantial evidence" support the ALJ's finding that Plaintiff can perform some work in the national economy is defeated if the ALJ is allowed to substitute his own unsubstantiated opinion for the educated testimony of a vocational expert with whom the ALJ disagrees. In *Shavers v. Secretary of Health, Education and Welfare*, 438 F.Supp. 535, 537 (E.D.Mich.1977), where the ALJ acknowledged claimant's severe condition but asserted that claimant could nonetheless perform "various jobs of a non-stressful, sedentary nature," the court found that "[t]his complex conclusion may not be reached without the assistance of expert vocational testimony." The court held that it was improper and violated the legislative intent of the Social Security Act for the ALJ to take "administrative notice" of the existence of jobs that the claimant could perform. *Shavers*, 438 F.Supp. at 536; *cf. Selewich v. Finch*, 312 F.Supp. 191, 196 (D.Mass.1969) ("The examiner could not properly take notice of any such job outside the testimony before him, and could not properly assume the existence of one"). The ALJ is obliged to "consider both evidence that supports, and evidence that detracts from" his ultimate finding. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir.1975). He cannot merely disregard evidence which does not support his conclusion. Therefore, the ALJ exceeded his role in making a finding which ignored and circumvented the conclusions reached by the vocational expert by taking administrative notice of the existence of a job. Such notice is not evidence of that job's existence, and thus does not meet the burden imposed upon the Secretary to prove by substantial evidence that a job exists in the national economy which Plaintiff, considering her age, education, work history, and medical impairment, can perform.

Even if the ALJ were permitted to take official notice of the existence of a job which Plaintiff could perform, he erred in the form of his assessment of Plaintiff's job capabilities. The ALJ finds only that Plaintiff can do "work functions of a low stress type work activity." Tr. at 14. He does not specify whether she can do skilled, semi-skilled, or unskilled labor per 20

C.F.R. § 404.1568, nor whether Plaintiff can do jobs requiring sedentary, light, medium or heavy exertion. 20 C.F.R. § 404.-1567. These categories were intended "to help determine the existence in the national economy of work you are able to do," 20 C.F.R. § 404.1568, and thus to assist the Secretary in meeting her burden. Moreover, that burden is met only if the ALJ "articulate[s] specific jobs that the claimant is able to perform." *Cowart v. Schweiker,* 662 F.2d at 736. The ALJ's nebulous general characterization of the type of work he felt Plaintiff could perform neither exhibits exactly what job the ALJ has in mind, nor the existence of that job. Therefore, the ALJ again fails to meet the strict burden imposed upon the Secretary of proving the existence in the national economy of a *specific* job that the Plaintiff could undertake. *Hall v. Secretary of Health, Education and Welfare,* 602 F.2d 1372, 1377 (9th Cir. 1979); *Cowart v. Schweiker,* 662 F.2d at 736.

 Conceivably, the ALJ believed that he did not have to meet the strict burden imposed upon the Secretary if he based his assessment that Plaintiff could do "low stress type work" upon Plaintiff's success in nursing school. Similarly, perhaps the ALJ felt that Plaintiff's school experience provided evidence of Plaintiff's ability to work sufficiently substantial to obviate the need for reliance on the vocational expert's testimony. However, the ALJ's extrapolation that Plaintiff's performance at school showing her to be "capable of understanding, remembering and carrying out instructions," Tr. at 14, and able to "respond appropriately to the supervision and attendant pressures and stress involved in the taking of tests and examinations" makes her capable of doing substantial gainful activity, *id.,* is at best superficial evidence of Plaintiff's ability to do work that exists in the national economy.

The ALJ disregards the Plaintiff's environment when he assesses her school performance. However, in assessing Plaintiff's mental impairment, the regulations require the ALJ to consider the degree of Plaintiff's impairment not only as reflected in her occupational sphere, but also as demonstrated in her social sphere, in her ability to take care of her personal needs, and in her ability to relate to others. 20 C.F.R. § 404, Subpart P, App. 1, § 12.00(A). Although consideration of this total picture can lead to a finding that a claimant is not disabled despite an inability to work, as in *Sitar v. Schweiker,* 671 F.2d 19, 21 (1st Cir.1982), it may also lead to the conclusion that regardless of her abilities at school, this Plaintiff is nonetheless disabled. Here the testimony in the record reveals the misleading nature of the ALJ's erroneous reliance upon Plaintiff's school performance alone in drawing his conclusion that Plaintiff is able to perform substantial gainful activity.

Testimony from the various physicians demonstrates the illusory quality of Plaintiff's success at school. Dr. Sattin described the "very supervised" work setting in which the nursing students were placed, Tr. at 157, which would not be duplicated outside of the school. Dr. Voss described Plaintiff's problems in dealing with "life situations, lack of friends, lack of social relationships, anxiety in social relationships, anxiety and excessive irritibility [sic] in situations of authority." Tr. at 161. Dr. Kamm testified about the "situational problems" in Plaintiff's life that aggravate her psychological condition, such as dealing with her husband and her autistic son, Tr. at 23, going out of her house, buying groceries, paying bills, caring for financial matters, running a house, Tr. at 24, bathing and grooming herself, and "functioning as a wife, mother." Tr. at 34. When asked how he would account for Plaintiff's success in school, Dr. Kamm testified that because her autistic son was recently sent away to a special school, Plaintiff "hasn't had the responsibility of mothering." Tr. at 40. Similarly, during the time of her nursing school experience, Plaintiff's husband was residing at a V.A. hospital, so that she "hasn't had to deal with the responsibility of being a wife." *Id.* Instead, Plaintiff had moved in with her mother where "her mother has been, literally her

mother—has been mothering and taking care of food, laundry, household goods, such as shopping, paying bills." *Id.* Dr. Kamm concluded that if those situational supports were removed, Plaintiff's condition would revert to a severity approaching the magnitude of her illness at the time she had to be hospitalized in 1981.

In holding that Plaintiff's school experience proves her ability to do substantial gainful activity, the ALJ failed to look at the total picture. His assessment is thereby formulated in contravention of both 20 C.F.R. § 404, Subpart P, App. 1, § 12.00(A) and the evidence on the record. The ALJ cannot judge Plaintiff's school experience in a vacuum. The testimony suggests that when Plaintiff is again bridled with the full panoply of her usual daily responsibilities from which she is presently protected, her ability to withstand the stress of school and work would be questionable. Since the ALJ has ignored this evidence in his finding, his decision that Plaintiff's school performance demonstrates her ability to do substantial gainful activity is unsupported by substantial evidence, and is therefore insufficient to overcome the vocational expert's testimony that there is no job in the national economy which Plaintiff could do.

The Court finds that the ALJ's apparent failure to accord the testimony of the vocational expert either acknowledgment or substantial weight is a dispositive error. Although the ALJ is free to resolve conflicts in testimony, *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981), here, the ALJ did not demonstrate that a conflict exists. The ALJ simply ignored the testimony of the vocational expert. Where Ms. Mullen concluded there was no job in the national economy that Plaintiff could perform, and the record did not reveal substantial evidence upon which the ALJ could conclude that, in fact, Plaintiff *could* work at a low stress job, he failed to meet the Secretary's burden to prove, rather than surmise, that a job existed in the national economy which Plaintiff could perform. This Court recognizes the possibility that the ALJ may have inadvertently ignored the vocational expert's testimony. In deference to this possibility, this case will be remanded to the Secretary in order that the ALJ may clarify his opinion by giving due weight to all the evidence presented in the record, including the testimony of Ms. Mullen. Additionally, the Secretary is directed to retroactively reinstate Plaintiff's disability benefits, effective from the date of termination, and continuing until the date of final readjudication by the Secretary on remand, in accordance with this Memorandum.

It is hereby ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED; Defendant's Motion for an Order Affirming the Decision of the Secretary is DENIED; and this case is REMANDED to the Secretary for further proceedings consistent with this opinion, with directions to forthwith reinstate retroactively Plaintiff's disability insurance benefits, effective from the date of termination and continuing until the date of final readjudication by the Secretary on remand, in accordance with the foregoing Memorandum of Decision.

So ORDERED.