Edmond P. LIZOTTE, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.

No. 80–1752.

United States Court of Appeals, First Circuit.

Submitted March 5, 1981.

Decided June 30, 1981.

Allan A. Toubman, Presque Island, Me., on brief for plaintiff, appellant.

Donna McCarthy, Asst. Regional Atty., Dept. of Health and Human Services, Washington, D.C., on brief, for defendant, appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Appellant seeks review of the judgment of the district court affirming a decision of the Secretary of Health and Human Services which terminated his social security disability benefits. On appeal he contends that the district court applied an erroneous

standard of review and that the Secretary's findings, to the effect that his mental condition was not totally disabling and that he was capable of engaging in substantial gainful activity, are not supported by substantial evidence in the administrative record.

Appellant was originally awarded social security supplemental security income and disability insurance benefits on July 11, 1975 on the basis that he was suffering from a "depression, severe, with anxiety."[1] On February 28, 1977 he received notification that his benefits award was being reexamined for current evidence of disability. He was asked to complete a questionnaire which accompanied the notice. Upon review of this form and the medical report of a psychiatrist who had been designated to examine appellant the Secretary decided on May 10, 1977 to terminate benefits as of April, 1977.

█ It is first argued that the district court applied an erroneous standard of review to the Secretary's decision. This contention is premised on the district court's choice of words to articulate in part why it was upholding the termination. It stated: "The conclusion of the Appeals Council and the judge constitute a 'judgment call' which this Court should not disturb if it is the product of a reasoned approach and constitutes a reasoned conclusion."[2] Although this is not a verbatim reiteration of more common descriptions of substantial evidence review we do not think the district court's formulation of the standard it applied deviated so far off the mark so as to constitute error. The court examined the record, considered the different medical evidence and clearly stated it was looking for substantial evidence. Moreover, appellant ascribes too

much authority to the district court's function by arguing that substantial evidence review "[r]equires a thorough analysis of the competing factual claims, *and a resolution* of these competing factual claims," and by stressing that the district court did not "attempt to *assign more weight* to one doctor's opinion over another's based on length of consultation, experience with the client, and ability to communicate with the client." (emphasis ours). Neither the district court nor this Court sit to make de novo determinations. As we recently stated:

> In reviewing the record for substantial evidence, we are to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. We must uphold the Secretary's findings in this case if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion.

*Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir. 1981). (citations omitted). The district court's analysis was in conformity with this standard.

█ We address the much closer question of whether the Secretary's decision was supported by substantial evidence. The medical evidence of record contains the reports of three psychiatrists and a psychological therapist specifically addressing appellant's psychological-mental problems. Appellant was originally found disabled on the basis of Dr. Marshall E. Smith's reports of

---

1. The picture portrayed by the evidence of record is that appellant's medical problems are traceable to his involvement in an automobile accident in August, 1971. The record also indicates that appellant suffers from an old compression fracture of the vertebral body of L1, an old deformity of the left wrist area, hypertension, plantar warts and enuresis. Appellant did not press his claim of disability on these ailments and has not emphasized them on appeal. From the reports of Doctors Leland

White and William G. Chan and x-ray reports it does not appear that any of these conditions or all of them together could support a finding of disability.

2. This was the opinion of a United States Magistrate who initially issued a recommended decision on cross-motions for summary judgment. The decision was approved by the district court.

February 18, 1975 and January 27, 1976. Dr. Smith treated appellant from July, 1975 to January 23, 1976. In his first report Dr. Smith found appellant's depression to be "extremely severe" with fair response to medication. In his second report he·found appellant "still extremely upset, periodically depressed, frustrated, feels that he is unable to work and in general has been having difficulty functioning." He further stated that appellant had made only "minimal improvement."

It was the Secretary's determination that these psychological problems ceased to be disabling as of May 1977. This decision was based on Dr. Edward C. Thompson's report of March 30, 1977. In this report he found appellant to be "an anxious 35 year old married male disabled because of injuries received some years ago in an auto accident. Patient is a tense, nervous man whose personality is contributing to his not improving. He is not seen as totally and permanently psychiatrically disabled although he may be disabled for physical reasons. Disability for psychiatric illness not recommended."

These were the only reports available to the Secretary when the May 10, 1977 decision to terminate benefits was made. Upon these the Secretary determined that the "medical evidence shows impairment is no longer of sufficient severity to prevent SGA [substantial gainful activity]."[3] This was also the only medical evidence on appellant's psychiatric condition available to the Administrative Law Judge (ALJ) who ruled on the administrative appeal. The ALJ held that although appellant still continued to suffer from anxiety neurosis it was not of such a level as to preclude him from light sedentary activity.

After the ALJ had rendered his decision, and while review was pending before the Appeals Council, appellant submitted two further reports. In the first of these Dr. Irwin M. Pasternak, March 27, 1978, described appellant as a "markedly apathetic, depressed withdrawn 36 year old man who appeared to be slightly older than his stated age." His diagnostic impression was "Depressive Neurosis, Severe . . . 3. Borderline Mental Retardation." In his recommendation Dr. Pasternak stated: "At the present time I believe this man is disabled and with the extent of his depression employment would be impossible . . . prognosis for improvement is limited and rehabilitation potential appears to be poor." Finally, addressing this same point[4] is the April 4, 1978 statement of Lloyd R. Frech, a psychological therapist, which found appellant "oriented in the four spheres and cooperative with moderately depressed affect, moderate to severe anxiety, dull normal intellectual capacity and no signs of organicity or psychosis." It was Mr. Frech's impression that appellant was "reacting to an anxiety reaction, moderate to severe along with moderate depression and general inadequacies which will undoubtedly affect his ability to function in a work setting at the present."

Appellant's position is that on this record Dr. Thompson's report cannot stand as the sole basis for concluding that the disabling condition had improved. He argues that this report is conclusory in that it is not as thorough as the other reports, and that it is marred by Dr. Thompson's difficulty in communicating with the appellant who basically speaks only French. While we con-

3. Appellant, citing to *Miranda v. Secretary of Health, Education and Welfare*, 514 F.2d 996 (1st Cir. 1975), vigorously argues that the Secretary was compelled to show that his mental impairment improved after 1975 before he could terminate benefits. We do not understand this to be an issue in dispute. The Secretary's opinion implies that the decision was based on an improvement, or at least on the present absence of an impairment, and thus it is this finding which must be supported by substantial evidence.

4. Dr. William Chan, a general practitioner who treated appellant, in his statement of September 28, 1977 lists appellant's medical conditions and concludes that he is "totally disabled." This late report stands in contrast to his earlier reports for the period of April 1975—March 9, 1977 which contain comments to the effect that appellant is doing "pretty well" and that "he should be encouraged to return to work."

cede that there is medical evidence upon which a finding of continuing disability could be premised we hold the resolution of the conflict within the medical evidence in the present record is a matter for the Secretary to determine. *See Rodriguez v. Secretary of Health and Human Services, supra; Torres Gutierrez v. Secretary of Health, Education and Welfare,* 572 F.2d 7, 8 (1st Cir. 1978); *Gonzalez v. Richardson,* 455 F.2d 953, 54 (1st Cir. 1972).

First, it is clear that it is within the Secretary's province to accord greater weight to the report of a medical expert commissioned by the Secretary. *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971). Second, we do not read Dr. Thompson's statements to be so unsupported as appellant suggests, and certainly not less than the reports of Dr. Pasternak or Mr. Frech. While Dr. Thompson's report and conclusions stand somewhat alone it does not follow that a trier of fact—be this in an administrative or in a purely judicial setting—is compelled to decide factual issues solely upon the number of witnesses who attest to a particular conclusion. Here the critical determination was appellant's continued disability after April 1977. The reports of Doctors Thompson and Pasternak and Mr. Frech are the most relevant to this determination. There is little, however to substantiate the suggestion made by appellant that the reports of Dr. Pasternak or Mr. Frech are entitled to greater weight because they had a lengthier consultation and more experience with appellant than did Dr. Thompson. The record shows that each examined appellant on only one occasion. Also we can find no demonstrable indications that any language barrier problems seriously vitiated or undermined Dr. Thompson's examination. Appellant's wife (who testified in English at the administrative hearing) was present during the interview conducted and it appears that some of what appellant reported to Dr. Thompson is to a certain degree corroborated by appellant's testimony at the administrative hearing.[5] More-

over, in this particular respect the record does not indicate why examinations conducted by other physicians (not revealed to be fluent in French or to have been assisted by appellant's wife or other person) would not suffer from a similar communications problem. Finally, the great emphasis placed upon appellant's testimony at the administrative hearing to demonstrate evidence of an inability to communicate with, relate to or tolerate other people including his family, must be measured against the findings of the ALJ who stated in his decision that appellant: "exhibited no significant observable physical signs which could be related to severe pain or nervousness. His ability to get about on a regular basis and otherwise function physically appears generally unimpeded. At the hearing, claimant did not appear preoccupied with personal discomfort and his thoughts did not wander during the hearing. He answered questions alertly and his general appearance suggested no obvious abnormality." Again, questions of demeanor and credibility are correctly left for the Secretary. *See Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir. 1969).

■ The last issue raised challenges the Secretary's finding that appellant had the ability to engage in substantial gainful activity. It was the ALJ's decision that appellant was unable to engage in employment "requiring anything more than light sedentary activity, not involving significant use of the back, lifting over 10 pounds with prohibitions on working at unprotected heights, around hazardous machinery and not requiring sitting or walking for long periods of time." While this meant that appellant could not return to employment of the type he had previously engaged in, the ALJ concluded, on the basis of the testimony of a vocational expert, that he was capable of performing such jobs as a "marker machine operator in a shoe factory or similar situation," "pantry man in a food service situation" and a "negative cutter

---

5. For example Dr. Thompson's report states that appellant "spends his time fishing, walking or watching TV." At the hearing appellant testified to engaging in this or similar activity.

and spotter in a photographic situation." Appellant argues that the Secretary has not adequately addressed the effects of his mental impairment vis-a-vis his capacity to meet the requirements of these jobs. The vocational expert who testified at the hearing, after familiarizing himself with the evidence and after having heard appellant's testimony, did in fact address these points. In the various hypotheticals posed to him he was asked to consider appellant's ability to perform under different assumptions, among which were restrictions precluding appellant from tolerating a regular eight hour day on a sustained basis; significant restrictions on appellant's ability to concentrate and pay attention; and other restrictions on the ability to learn on the job, take orders, understand directions, accept criticism and ask for help. It was the vocational expert's opinion that if appellant was found to be significantly restricted in any one of these areas, especially in the ability to concentrate and pay attention, he would not be able to engage in the jobs listed. But as the ALJ's decision indicates appellant's testimony (where most of the evidence supporting a general inability to interact is found) was in large part discredited.[6] Instead the ALJ chose to accept that part of the evidence which indicated that appellant was not handicapped by these restrictions. Although we as the trier of fact might have reached an opposite conclusion, we cannot say that a reasonable mind could not have decided as did the Secretary and we are, therefore, constrained to uphold his decision.

*Affirmed.*

---

**6.** Appellant asserts that the ALJ never specifically rejected his testimony or doubted his credibility. We think, however, a fair reading of his decision indicates the opposite.