Ella P. KINNEY, Social Security No. 007–10–4623, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

Civ. No. 84–0345–P.

United States District Court, D. Maine.

May 6, 1985.

Michael A. Bell, Bell & Geores, Lewiston, Me., for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER OF REMAND

GENE CARTER, District Judge.

This is an action under 42 U.S.C. § 405(g) for review of a final decision of the Secretary of Health and Human Services, which denied Plaintiff's application for widow's disability insurance benefits. Plaintiff is a 56-year-old woman who alleges that she became disabled as a result of a spinal disorder. Plaintiff's application was denied administratively, and after a *de novo* hearing, by an Administrative Law Judge (ALJ). The ALJ found that Plaintiff's impairment does not meet or equal an impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P.

In reviewing the termination of disability benefits, the standard of this Court's review is whether the determination made by the ALJ is supported by substantial evidence. 42 U.S.C. § 405(g); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusions drawn. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Plaintiff is applying for disability benefits as the widow of an insured wage earner. The Social Security Act provides that a widow shall not be determined to be under a disability unless her impairment is deemed, under regulations prescribed by the Secretary, to be severe enough to preclude her from engaging in "any gainful activity." 42 U.S.C. § 423(d)(2)(B). This standard is stricter than the standard for wage earners, who are entitled to benefits if they are unable to engage in "substantial" gainful activity. *See* 42 U.S.C. § 423(d)(2)(A); *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 220 (1st Cir.1981).

The Secretary's regulations provide that the Secretary will consider only a widow's physical or mental impairment; age, education and work experience are not to be

considered. 20 C.F.R. § 404.1577. The regulations further provide:

   (a) We will find that you are disabled and pay you widow's or widower's benefits as a widow, widower, or surviving divorced spouse if—

   (1) Your impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any impairment shown there;

   (2) Your impairment(s) meets the duration requirement.

20 C.F.R. § 404.1578.

The claimant in this case has a history of back problems. On March 22, 1982, Edward C. Schmidt, M.D., a treating physician, diagnosed her as suffering from left lumbosacral radiculitis, secondary to degenerative arthritis in her lumbosacral spine. Record at 123. He gave his opinion at that time that Plaintiff's impairment met listing 1.05(C) of Appendix 1 to 20 C.F.R. Part 404, Subpart P. An X-ray report of February 25, 1982 revealed minor degenerative changes in her lower lumbar spine. Record at 125. In response to interrogatories propounded by the Secretary in April of 1982, Paul M. Cox, Jr., M.D. offered a diagnosis of left lumbosacral radiculitis and degenerative arthritis of the lumbar spine, knee and ankle. Record at 178. He stated that her impairment did not meet or equal a listed impairment. Record at 179. On December 17, 1982, Bruce Sigsbee, M.D. stated that she "fits very well with the diagnosis of lumbar spinal stenosis," and recommended surgery. Record at 218.

C. Craig Heindel, M.D. performed a discectomy, a surgical procedure, on Plaintiff's spine on March 7, 1983. At issue in this case is the degree of permanent impairment that remains following Plaintiff's discectomy and the extent to which the surgery itself may have produced disabling effects. Dr. Heindel examined Plaintiff several times following the surgery. In his most recent office note which is contained in the record, Dr. Heindel noted that Plaintiff still has pain in her back and down her right leg. Record at 232. He further noted that she had "numbness in the lateral aspect of the right foot and no weakness and has a diminished right achilles reflex." *Id.* He also observed some tenderness over the sciatic nerve and sacroiliac joint on her right side. *Id.* His "impression" was "status post disc with some continued monoradicular pain." *Id.* Dr. Heindel later offered the opinion on three separate occasions that her impairment "clearly" meets Listing 1.05(C). Record at 236, 248, 283.

Another treating physician, Robert A. Sylvester, M.D., diagnosed post discectomy of L5–S1 with possible degenerative arthritis of the lumbar spine, the knees and ankles. Record at 239. He noted "exquisite tenderness" of the area where the surgical incision was made and of the knees upon flexion to 90 degrees. Record at 238. He also noted tenderness of both knees and the ankles. Record at 238–39.

In addition to the evidence summarized above, the ALJ had before him the testimony of the claimant and E. Charles Kunkle, M.D., a Medical Advisor to the Secretary. The claimant testified that her back and leg pain continue to be severe after her operation. Record at 39. She also suffers from swelling of her legs. Record at 36. Since the operation, she has acquired a limp and numbness in her foot. Record at 39. She can only walk a short distance and can stand for only 15 to 20 minutes. Record at 43.

The testimony of the Medical Advisor is critical in this case because it is the evidence upon which the ALJ based his decision.

The ALJ found that, despite Dr. Heindel's opinion, Plaintiff's impairment did not meet Listing 1.05(C). This finding is supported by substantial evidence. First, Dr. Kunkle testified that the medical evidence, including the reports of Dr. Heindel, did not show the existence of all of the clinical findings included in Listing 1.05(C). Record at 56–57. A review of the medical evidence supports this conclusion, and Plaintiff does not seriously contest it in this action for judicial review.

The ALJ also found that Plaintiff's impairment was not the medical equivalent of Listing 1.05(C). He based this finding entirely upon Dr. Kunkle's testimony. Record at 19. The Court has carefully reviewed Dr. Kunkle's testimony and has determined that the ALJ unduly circumscribed the matters upon which the doctor's opinion could be based. Dr. Kunkle's testimony is ambiguous at best, and is not substantial evidence supporting the Secretary's decision. This conclusion is mandated by the regulations governing determination of medical equivalence.[1]

The Secretary is to determine "medical equivalence" in accordance with 20 C.F.R. § 404.1526, which provides that the Secretary will compare symptoms, signs and laboratory findings about the claimant's impairment with the medical criteria set forth in the listings. "Symptoms" are defined as the claimant's own descriptions of his or her impairment. 20 C.F.R. § 404.1528(a). Pain is a symptom. *See* 20 C.F.R. § 404.-1529.

On examination by the ALJ, Dr. Kunkle testified:

Q  Testify with certainty (INAUDIBLE)

A  I cannot because this opinion that she meets or equals a listing would depend on hos [sic] much weight to give to her testimony. In other words, I would...

Q  Let's take the objective medical evidence, Doctor, as the equal (INAUDIBLE)

A  On the basis of objective evidence, she does not meet the listing and my understanding is that we sometimes can consider whether a patient equals the listing if symptoms described by the patient of impaired function are consistent with the known, with the demonstrated organic disease.

Q  If the—clinical evidence is present, do we have that here?

A  Yes. There is clinical evidence of disease, of structural disease with which the symptoms described by the patient as impairing function are consistent. That I judge based on which we can reach a decision (INAUDIBLE)

Q  Consistent with what, with the clinical evidence?

A  The clinical evidence, yes.

Q  And what sections are you considering?

A  I'm referring to the paragraph 404.-1529, how we evaluate symptoms including pain.

Q  No, no. I'm not asking that. That's not particular revelent [sic] in this case. It's only a question of whether the claimant meets or equals the listing. Now what categories are you talking about, the subjective testimony (INAUDIBLE)

From this testimony, it appears that Dr. Kunkle believed that his opinion as to whether Plaintiff's impairment equalled the listing would depend upon how much weight would be given to Plaintiff's description of her symptoms. He found that there was clinical evidence of structural disease consistent with Plaintiff's description of her symptoms. However, he was told by the ALJ *not* to consider her symptoms when giving his opinion as to whether her impairment equalled the listings.

After being told to disregard Plaintiff's subjective complaints, Dr. Kunkle testified that he could not give an opinion as to whether Plaintiff equalled the listing because there were no means to ascertain with certainty the existence of a lesion resulting from post-operative nerve root fibrosis secondary to the discectomy and to root manipulation during surgery. Record at 58–59, 68–69. The ALJ questioned Dr. Kunkle at some length about the existence of a lesion. The ALJ wanted to know whether there was an objective medical test or examination, apart from analysis of

---

1. As the excerpts from Dr. Kunkle's testimony quoted below demonstrate, the value of his testimony is further diminished by the poor quality of the transcript.

the patient's symptoms, that would establish the existence of a lesion resulting from nerve root fibrosis. The ALJ never asked Dr. Kunkle to give an opinion as to medical equivalence based upon available objective medical evidence and Plaintiff's description of her symptoms.

After the ALJ completed his examination, Plaintiff's attorney attempted to have Dr. Kunkle consider Plaintiff's account of her symptoms in rendering his opinion.

Q Okay, I guess just to clarify for my own mind, what I understand you to be saying is there's no particular test you could determine whether or not there's a persistent lesion. (INAUDIBLE) focal point of inquiry for you is whether or not meeting or equalling the listing in turning to the notion of equalling. Taken as a whole, all the data that you have available and the full account of the symptoms to which you've been exposed to today from the testimony, would you express, be able to express an opinion as to whether or not she meets any listings or equivalent?

A As I had indicated, she does not meet the (INAUDIBLE) and whether she, this condition is equivalent to 105C, it's a decision I can't make with certainty because it involves speculation as to the nature of the underlying lesion. I, I did state, repeat, I said earlier that if there is such a lesion in her case, that's post-operative nerve root fibrosis secondary to the previous disc and to manipulation at surgery. The symptoms she describes are consistent with such a lesion. I know of no way to prove it.

Q So this is a situation which there is simply no way for you or anyone else to prove it by any additional tests.

A I know or [sic] no other tests or examinations which would settle the presence or absence of the (INAUDIBLE)

Q However, is it your view that the symptoms are sufficient or are equivalent in severity to a situation where there would be such a lesion?

A (INAUDIBLE) *The symptoms are consistent with such a lesion.*

Q *And when you say consistent, you also mean in terms of their severity?*

A *Yes.*

Record at 68–69. (emphasis added).

The import of this testimony is unclear. Dr. Kunkle had been instructed to disregard Plaintiff's description of her symptoms, and it appears that the doctor believed that he required completely objective clinical evidence of the underlying lesion in order to render an opinion that Plaintiff's impairment equalled the listings, even after questioning by Plaintiff's attorney. Therefore, it appears that Dr. Kunkle never did offer an opinion based upon the available medical evidence, including Plaintiff's description of her symptoms.

Here, the ALJ relied exclusively upon Dr. Kunkle's opinion, which apparently did not take into account Plaintiff's description of her symptoms. Nor did the ALJ make separate, specific findings as to the credibility or weight given to Plaintiff's symptoms. Thus, the case must be remanded in order to enable the Secretary to give proper consideration to Plaintiff's symptoms as required by 20 C.F.R. § 404.1526. The Secretary's Medical Advisor must be told that he is entitled to assign whatever weight to Plaintiff's symptoms that would be assigned under medically acceptable clinical diagnostic techniques. *See* 20 C.F.R. § 404.1526(b).

Accordingly, it is ORDERED that this case be, and is hereby, REMANDED to the Secretary for further proceedings in accordance with this opinion.

So ORDERED.