Daniel WRONA, Plaintiff,

v.

Louis SULLIVAN, Secretary of Health and Human Services, Defendant.

Civ. A. No. 90–CV–10461.

United States District Court, D. Massachusetts.

June 18, 1991.

Maria L. Nunez, Southeastern Massachusetts Legal Assistance Corp., Fall River, Mass., for plaintiff.

Paul G. Levenson, U.S. Attorney's Office, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff Daniel Wrona ("Wrona"), a resident of Massachusetts, brings this action seeking review of the August 29, 1989 denial by an Administrative Law Judge of his request for supplemental security care and disability insurance benefits. The Appeal Council of the Social Security Administration, in a letter dated December 26, 1989, refused any further review of Wrona's application. Judicial review of social security proceedings is regulated by Section 205 of the Social Security Act, as amended, 42 U.S.C. § 405(g), which allows the party seeking review to commence a civil action in the federal district court for the judicial district in which the party resides. Accordingly, this Court has the proper authority to hear this action.

Wrona currently lives in Attleboro, Massachusetts. He was born on June 25, 1951, is five feet nine inches tall and weighs approximately 300 pounds. He left school in the eleventh grade and subsequently received his General Equivalence Degree. Wrona's employment history consists of working sporadically from 1974 to 1979 as a warehouse laborer with duties including emptying and loading boxes, unloading trailer trucks, stacking warehouse racks, and filling orders. During this period of employment, Wrona would lift and carry weights up to fifty pounds. From 1979 to

1981 Wrona held a position with a Mansfield carpet cleaner which required his traveling around the country. His duties included serving national accounts by using steam cleaning machines and rotary shampooers. These machines, which weighed approximately thirty pounds, had to be loaded on and off Wrona's truck each day. His position also involved the completion of daily reports and supervision of a co-worker. Wrona has not been employed since he injured his knee in 1981. Currently, his only source of income is from general welfare relief, which pays Wrona $171.00 every two weeks. Wrona has been receiving general relief since 1981. He also receives a monthly food allowance.

On January 14, 1985, Wrona filed for disability insurance benefits because of a combination of several different ailments, including alcoholism, asthma, kidney disease, left knee pain, and depression. The application was denied initially and on reconsideration. On March 2, 1987, Wrona applied for supplemental security income, alleging the same disability. This application was also denied initially and on reconsideration. On February 29, 1988, Wrona filed a second application for both disability insurance benefits and supplemental security income. Both applications have been denied by the Department of Health and Human Welfare ("Department"). The grounds for denial were identical for all the applications, namely, that Wrona was not so disabled, as the term is defined by the Social Security Act, 42 U.S.C. § 423(d), as to trigger the allocation of the requested benefits. In reaching this conclusion, the Department studied Wrona's medical records and personal statements along with his age, education, training, and work experience. Upon the denial of the 1988 applications, Wrona sought a hearing before an Administrative Law Judge. This request was granted and the hearing took place on July 5, 1989. The Administrative Law Judge denied the benefits and, subsequently, the Appeals Council refused further review.

In social security cases the district court essentially performs an appellate function. This Court must determine if the decision of the Secretary of Health and Human Services ("Secretary") is supported by substantial evidence and conforms to statutory requirements. *Geoffroy v. Secretary of Health and Human Services*, 663 F.2d 315, 319 (1st Cir.1981); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128 (1st Cir.1981). The relevant statute defines a disabled individual as one who is unable:

> "... to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..."

42 U.S.C. § 423(d)(1)(A). Section 423(d)(2)(A) further provides that an individual:

> "... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ..."

*Id.*, § 423(d)(2)(A).

■ The term "disability" can be interpreted to have two parts: a "medical" part which is concerned with the nature and severity of a claimant's impairment, and a "vocational" part which is concerned with the availability of suitable work. *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6 (1st Cir.1982).

In evaluating a disability claim the Secretary applies a series of tests embodied in its regulations. 20 C.F.R., § 404.1520; *Goodermote*, 690 F.2d at 6–7; *Milonas v. Heckler*, 626 F.Supp. 1192, 1194 (D.Mass. 1986). The first three questions constitute threshold "medical" tests. The Secretary's analysis should proceed in the following order:

First, is the claimant currently employed? If so, the claimant is automatically considered not disabled.

Second, does the claimant have a severe impairment? The Department defines "severe impairment" as "any impairment or combination of impairments which would significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment he is automatically considered not to be disabled.

Third, does the claimant have an impairment equivalent to one specifically listed in the (Appendix 1) regulations? If the claimant does have such an impairment, he is automatically considered disabled. *See Goodermote,* 690 F.2d at 5–6.

Pursuant to Test 1, a disability claim is resolved if the claimant is currently employed. If the claimant's ability to perform basic work-related functions is impaired significantly, however (Test 2), but not to the severity of impairments as listed in Appendix 1 (Test 3), the Agency will then proceed with questions four and five, the "vocational" tests.

Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If it does, then the claimant is disabled; if it does not, he is not disabled.

■ The claimant has the burden to prove Test 4, that is, his disability is serious enough to prevent him from working at his former job. *Goodermote,* 690 F.2d at 7. Once the claimant meets this burden, the Secretary has to show that there are other jobs in the economy that the claimant can nevertheless perform (Test 5). *Id.* at 7.

The basic standard of review for disability claims is found in the Social Security Act, which specifically mandates that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ..." 42 U.S.C. § 405(g). In reviewing the record for substantial evidence, the Court is to keep in mind that "issues of credibility and the drawing of permissible inferences from evidentiary facts are the prime responsibility of the Secretary." *Rodriguez v. Celebrezze,* 349 F.2d 494, 496 (1st Cir.1965). The resolution of conflicts in evidence and the determination of the ultimate question of disability is for the Secretary, and not for the doctors or the courts. *See generally Richardson v. Perales,* 402 U.S. 389, 399–400, 91 S.Ct. 1420, 1426–1427, 28 L.Ed.2d 842 (1971). The Secretary's findings must be upheld if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusions. *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981); *Milonas,* 626 F.Supp. at 1195.

In applying these tests to Wrona, the Administrative Law Judge reached the following conclusions: Since Wrona was unemployed, Test 1 is inconclusive and further inquiry is necessary. Test 2 showed that the claimant was found to have the residual functional capacity to perform the physical exertion and non-exertional requirements for work except for the inability to lift and carry more than twenty pounds, the inability to stand for more than fifteen minutes at a time or walk more than 150 feet, an intolerance for undue emotional stress, and the need to avoid excessive pulmonary irritants. The Administrative Law Judge impliedly concluded that these impairments were severe enough to limit Wrona's capacity to perform basic work-related functions. Continuing to Test 3, the Administrative Law Judge found that medical evidence established that Wrona has residuals of a left knee injury, alcoholism, a personality disorder, well controlled hypertension, asthma, proteinuria, and is markedly overweight, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulation No. 4.

In analyzing Test 4, the Administrative Law Judge held that Wrona was unable to perform his past relevant work as a warehouse laborer or maintenance worker but, in applying Test 5, that he retained a full range of sedentary work capacity which was not compromised by additional non-exertional limitations. Considering Wrona's age, education, work experience, and sedentary capacity, the Administrative Law

Judge applied Table No. 1, Appendix 2, Subpart P. Regulations No. 4, known as "the Grid," which directed a conclusion of "not disabled." *See* 20 C.F.R. Pt. 404, Sub. P, App. 2, Rule 201.28. A vocational expert testified that Wrona's limitations could be accommodated within several possible jobs, all of which are available in significant numbers in the regional and national economy. These jobs were said to include ticket collector, ticket seller, watchman, cashier, inspector, sorter, boxer, marker, assembler, order clerk, and information clerk. It was therefore found that the claimant was able to engage in substantial gainful employment notwithstanding his impairments.

In short, the Administrative Law Judge found that Wrona had not worked since his knee problems commenced in 1981 (Test 1), and that his physical and mental condition were impliedly "severe" impairments (Test 2) which prevented him from returning to his past relevant work as a carpet cleaner or warehouseman (Test 4), but which, when considered either individually or in combination did not meet or equal a listed impairment (Test 3) and did not prevent him from engaging in other substantial gainful employment (Test 5). Accordingly, Wrona was denied his requested benefits.

Wrona seeks reversal or remand on the grounds that (a) the decision of the Administrative Law Judge was not supported by substantial evidence, (b) the Secretary failed to meet his burden of showing that there are other jobs existing in significant numbers in the national economy which Wrona can perform consistent with his medically determinable impairments, age, education, and work experience, and (c) the decision is contrary to law. While there is substantial overlap in this array of contentions, careful scrutiny of the record permits them to be addressed seriatim.

A. *Allegation that the decision of the Administrative Law Judge was not supported by substantial evidence.*

The physician primarily responsible for Wrona's physical treatment since 1983 has been Dr. Christopher J. Wlaz. In reports issued on January 23, 1985 (A26, P252)[1] and March 30, 1987 (A38, P343), Dr. Wlaz reported diagnoses of asthma, gout, obesity, hypertension, and proteinuria. All of these conditions were said to be well controlled by medication and caused no functional impairments. Dr. Wlaz, although not responsible for the care of Wrona's knee, felt the unstable condition of Wrona's knee was caused by cartilage or ligament damage or both (A26, P252).

Wrona had his knee cared for by the Orthopedic Clinic of Rhode Island Hospital whose records show that Wrona has claimed knee problems since 1981 (A21, P228). On May 6, 1982, Dr. Fathallah conducted arthroscopic surgery on Wrona's left knee. The operation revealed a chronic tear of the anterior cruciate ligament and a loose lateral meniscus (A13, P173). Rather than go through extensive surgical repair or re-enforcement, Wrona was given a knee brace in an attempt to provide needed stabilization of the joint (A20, P227). Knee problems continued to hinder Wrona.

A second arthroscopic operation was performed on Wrona's left knee in September, 1985. This operation resulted in the removal of a piece of torn medial meniscus (A21, P233). A third operation was conducted in October, 1985, to correct the problems caused by the chronic tear of the anterior cruciate ligament (A22, P238). The purpose of this operation was to increase the knee's stability which had been lost due to the torn ligament.

Only limited success from the operations has been realized. Wrona testified before the Administrative Law Judge that knee problems continue to plague him on a daily basis. Wrona claims he cannot sit with his knee bent for long periods of time because his leg goes numb and cramps up, but neither can he stand for longer than fifteen minutes nor walk 150 feet without problems (P31–39). Wrona does state that he

---

1. The "A" refers to the particular appendix to which reference is made; the "P" reference is to the sequentially numbered page in the record.

can sit with his leg straight without any discomfort. Wrona can take stairs only one at a time (P32), and drive for only short periods of time (P31). Wrona has been able to take care of his basic household chores. In general, Wrona feels his physical condition has gotten worse over the years, with his knee causing the majority of his problems (P36–37).

There is no medical evidence supporting Wrona's claim that his physical limitations alone would classify him as "disabled." There was no evidence of a physical impairment which approached the level of severity of any impairment listed in Appendix 1 to Subpart P of the Social Security Regulations No. 4. Wrona can offer only his subjective testimony. The Administrative Law Judge did acknowledge the physical limitations by restricting Wrona's exertion level to that of sedentary work, the lowest available level of physical exertion (P15). This classification limits the type of jobs considered to those which involve occasional lifting of less than ten pounds and which require only limited amounts of walking and standing. This holding is consistent with the testimony given by Wrona and is supported by substantial medical evidence. The Administrative Law Judge used the available medical records, Wrona's testimony, and his observations to reach this decision (P14–16).

Wrona also claims mental disability, specifically mental impairments which meet the criteria of § 12.08 (personality disorder) and § 12.09 (substance abuse disorder) of the Listing of Impairments. The Administrative Law Judge determined that psychiatric evidence does indicate the presence of both these disorders (P369–81, 388–404); however, their severity does not reach the level necessary to constitute a disability under either listed impairment.

Wrona's history of psychiatric treatment dates back to a report written by Dr. Arnold Nielson in April, 1985. In providing Wrona with several months of psychiatric treatment, Dr. Nielson recognized Wrona's alcohol dependency and reported that Wrona suffered from occasional anxiety attacks. However, he considered the anxiety to be under control and not a disability (A25, P248). Wrona subsequently sought supportive psychotherapy from a Dr. Hart between January, 1986 through at least May, 1988. In a report written in April, 1987, Dr. Hart indicated that he felt Wrona's major problems were physical, namely continuing left knee problems, and not psychological. Dr. Hart felt that Wrona would have the capacity and motivation to learn a new skill if it were not too stressful on his knee. In a follow-up report issued in May, 1988 (Exhibit 17, P474), Dr. Hart indicated Wrona was struggling with his alcohol problem and suggested only part time employment. This would allow Wrona to continue attending Alcoholics Anonymous, which in Dr. Hart's opinion provided essential support in Wrona's fight to stay sober. It is clear from the progression of reports that Dr. Hart felt Wrona was facing increasing difficulties with this struggle against alcohol. However, since Dr. Hart recommended part-time work, it is equally clear that he did not consider Wrona disabled. Basic to Dr. Hart's recommendation is facilitating Wrona's ability to attend Alcoholics Anonymous meetings. There is no indication that Wrona could not be employed and still obtain the necessary support from Alcoholics Anonymous.

The Administrative Law Judge also relied upon a psychiatric review conducted by the Social Security Administration (Exhibit 2, P366–81). This review supports the position of the Administrative Law Judge that Wrona indeed has certain mental impairments but they do not individually or in the aggregate constitute a degree of limitation warranting a disability classification.

■ This Court rules that there is substantial evidence supporting the decision of the Administrative Law Judge as to both the physical and emotional claims in Wrona's complaint. This becomes obvious when the Administrative Law Judge, in analyzing Wrona's residuary functional capacity, indicated Wrona was capable of performing only sedentary jobs in a low stress environment. Both the medical and psychiatric records are in accord. There is an absence of firm clinical findings establish-

ing impairments severe enough to justify a conclusion that Wrona is disabled. The only conflicting evidence is provided by Wrona himself. Symptoms, that is a person's own description of his physical or mental impairments, can be considered only to the extent that such symptoms are confirmed by laboratory findings. 20 C.F.R. § 404.1529. The Administrative Law Judge has acted properly in weighing objective medical evidence against Wrona's subjective complaints, especially when the medical evidence provides substantial support for the conclusion reached. Accordingly, this Court rejects Wrona's allegation that the decision of the Administrative Law Judge was not supported by substantial evidence.

B. *Allegation that the Secretary failed to meet his burden of showing that there are other jobs existing in significant numbers in the national economy.*

This allegation revolves around Test 5 which requires the Administrative Law Judge to determine Wrona's residual functional capacity, or what Wrona can do despite his limitations. The Administrative Law Judge first analyzed the effects of Wrona's physical limitations, and then determined to what extent his work capability was narrowed further by his non-exertional limitations. The Administrative Law Judge concluded Wrona's physical impairments precluded him from performing anything except sedentary work. Consequently, in light of Wrona's age ("younger"), education ("high school graduate"), and work experience (semi-skilled, not transferable), Rule 201.28 of the Medical Vocational Guidelines 20 C.F.R. Part 404, Subpart P, App. 2 ("the Grid") indicated a finding of not disabled based on the exertional impairments alone. The Administrative Law Judge next determined that Wrona's mental impairments prevented him from performing stressful work in environments which would expose Wrona to pulmonary irritants.

■ The non-exertional impairments present problems in the application of the Grid because it considers only physical impairments, not mental ones. Accordingly, where the claimant has one or more non-strength limitations, the Grid may not accurately reflect what jobs are available. *Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir.1989). In cases where a non-exertional impairment has a significant affect on the claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means. *Id.* at 524. This is typically done through the use of a vocational expert. If the non-exertional impairments impose no significant restriction on the range of work a claimant is exertionally able to perform, however, reliance on the Grid remains appropriate. *Id.* at 524.

In sum, the more the occupational base is eroded by the mental impairments, the less applicable are the factual predicates underlying the Grid rules, and the greater the need for vocational evidence. *Id.* at 525. Thus, the Administrative Law Judge has available three possible lines of analysis; *viz.* 1) the mental impairments are not significant and the Grid provides the proper occupational base from which the Secretary can meet his burden of proving the existence of other jobs in the national economy; 2) the mental impairments are significant but the occupational base provided by the Grid is not marginally reduced and thus still provides a proper guideline from which the Secretary can meet his burden; 3) the mental impairments are significant and the occupational base provided by the Grid is so reduced by the impairment that its rules alone are no longer sufficient for the Secretary to meet his burden and vocational evidence is required.

In this case, either intentionally or accidentally, the Administrative Law Judge has analyzed Wrona's mental impairments under both the first and third options without expressly making his findings in the alternative. The Administrative Law Judge explicitly states in his order that "[t]he claimant['] s capacity for the full range of sedentary [jobs] has not been significantly com-

promised by his additional non-exertional limitations" (Order 12, P17). The Administrative Law Judge accordingly applied the Grid rule 201.28 which determined Wrona was not disabled. Additionally, during the course of the hearing, the Administrative Law Judge heard testimony of a vocational expert. The vocational expert, recognizing both the physical and mental impairments, testified that there were "tens of thousands" (P54) of available jobs in Rhode Island and Massachusetts in which Wrona could be employed. Under either option, the Administrative Law Judge could correctly conclude that the Secretary has met his burden of establishing a sufficient number of existing jobs in the national economy.

C. *Allegations that the decision of the Administrative Law Judge is contrary to law.*

This third contention is difficult to assess since Wrona does not make clear just where in the process the alleged problem arises. This Court rules that the Administrative Law Judge correctly proceeded through the proper steps (outlined previously) in evaluating Wrona's disability claim.

██ Perhaps Wrona is challenging the finding of the Administrative Law Judge that Wrona's subjective testimony as to the severity of his impairment was not credible. A challenge to the decision on this basis is without legal merit. It is settled law that the judgment of an Administrative Law Judge is controlling on the issue of credibility. *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 130; *Milonas,* 626 F.Supp. at 1198. Here the Administrative Law Judge obviously considered Wrona's testimony on the severity of his knee pain but determined it lacked credibility. Such a decision is clearly within the powers of the Administrative Law Judge and any contention that this evaluation was contrary to the law must fail.

Since the findings of the Administrative Law Judge are supported by substantial evidence, resting as they do on clinical examinations as well as medical and psychiatric opinions, and since the Secretary met his burden of establishing the existence of a substantial number of existing jobs in the national economy which could be performed by the claimant, the decision of the Secretary is AFFIRMED.