Linda REDEKER, Plaintiff–Appellant

v.

Shirley S. CHATER, Commissioner,
Social Security Administration,[1]
Defendant–Appellee.

Civil A. No. 93–11076–GAO.

United States District Court,
D. Massachusetts.

Jan. 19, 1996.

1. Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. Pub.L. No. 103–296, 108 Stat. 1464. In accordance with section 106(d) of Pub.L. No. 103–296, Shirley S. Chater, Commissioner of Social Security, should be substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although somewhat anachronistic, the opinion will refer to the actions of the Secretary as those of the Commissioner.

Sandra L. Smales, Boston, MA, Ellen N. Wallace, Greater Boston Legal Services, Boston, MA, for plaintiff. .

Charlene A. Stawicki, United States Attorney's Office, Boston, MA, for defendant.

## MEMORANDUM OF DECISION

O'TOOLE, District Judge.

The plaintiff Linda Redeker seeks review of the denial by the Commissioner of the Social Security Administration (the "Commissioner") of her claim for disability and supplemental security income benefits. She applied for benefits on December 19, 1989, after sustaining an allegedly disabling neck injury on November 28, 1989. The Social Security Administration denied the application initially and on reconsideration. After a hearing, an Administrative Law Judge ("ALJ") concluded Redeker was ineligible for benefits because she was not disabled within the meaning of the relevant statutes and regulations. In particular, the ALJ found that she could perform her previous work or other work available in the national economy. Redeker sought review of the decision by the Appeals Council, which remanded the case to the ALJ for further hearings. The ALJ held a second hearing and again denied Redeker's claim. That ruling became the final decision of the Commissioner on February 20, 1993, when the Appeals Council denied Redeker's second request for review. Redeker now asks this Court to reverse or remand the final decision of the Commissioner. For the reasons set forth below, the Commissioner's decision is affirmed.

## I. FACTS

Linda Redeker is a thirty-nine year old, college-educated woman who has worked at various times as a commercial artist, a sign painter, a waitress, a riveter, and a self-employed publisher of a magazine. On November 28, 1989, she sustained an injury to the right side of her neck from improper chiropractic manipulation. About three weeks after the injury, she sought treatment at the East Boston Neighborhood Health Center. She was diagnosed with right paracervical neck spasm, prescribed Naprosyn

and Flexeril, and referred to an orthopedist, a Dr. Greenleaf, who concluded after examination that "she has what is becoming a chronic trapezial strain." (R. at 225.) By the end of December, Redeker had minimal pain, with tenderness, but still had limitation of motion.

During January, 1990, Redeker saw Dr. George Hazel for pain in her neck, right shoulder and arm, lower back, and behind her right eye. An MRI revealed a bulge at C5–C6 without clear evidence of root compression. (R. at 238.) Dr. Hazel noted her limited range of motion, recommended hot packs and massage and considered her disabled from her work. (R. at 241–42.) On Dr. Hazel's referral, Redeker began treatment at the Neurosurgery Department of the Lahey Clinic with a neurosurgeon, Dr. Sparacio. Examination notes indicate that she had full range of motion in her neck, but pain on extension and head tilt, mid-vertebral and mid-paraspinal tenderness, and no palpable major muscle spasm. Although the doctor recommended physical therapy for the neck for one month, Redeker canceled two scheduled appointments and asked for medication to relieve her symptoms. (R. at 236, 238–40.) Redeker also sought a second opinion from Dr. Louis Meeks of the Neurology Department at Beth Israel Hospital, who recommended that she continue Naprosyn, cervical traction and a hydroculator. She discontinued the traction because it increased her pain. (R. at 270.)

Redeker next saw a consultive physician, Dr. Albert Franchi, on April 4, 1990. Dr. Franchi noted that Redeker held her neck in obvious spasm. He also found she had a limited range of motion in her neck, paresthesia on the back of her right fourth and fifth fingers, and tenderness over the paravertebral spinal muscles from C5 through C7. Although he found her symptoms confusing, he considered them consistent with possible disc protrusion. (R. at 246–47.)

Redeker experienced some improvement in May, 1990. When the pain returned in July, however, Dr. Hazel recommended that she not work for four to six more months and referred her to another neurologist, Dr. Albert Fullerton. (R. at 264.) Dr. Fullerton corroborated Dr. Hazel's diagnosis and recommended a stronger anti-inflammatory and physical therapy. He also recommended that she not work until 1991. Dr. Fullerton prescribed a muscle relaxant, which Redeker rarely took. (R. at 28, 270–72.)

In June, 1990, Redeker began seeing a chiropractor, Dr. Jeremiah Kelley. He noted restriction on right lateral flexion and extension of the cervical spine and muscle spasm of the upper trapezius and posterior cervical muscles that had caused a loss of the normal cervical lordosis. By January, 1991, Dr. Kelley noted that Redeker obtained temporary relief from his treatments, but that her pain eventually returned. He indicated that her disability made it impossible for her to work and recommended a re-evaluation in six months. (R. at 293.)

Redeker then was next examined by Dr. Huffnagle, a spine and arthroscopic surgeon, who opined that she had a herniation of her disk at C5–C6. In March 1991, he believed that her disability would not last for more than another three months, but in October, 1991, he reported that she continued to suffer pain and was still totally disabled. (R. at 294–97.) Redeker at the same time underwent physical therapy, although she canceled several appointments.

After October, Redeker sought no medical treatment until March, 1992, when she saw an orthopedic surgeon, Dr. Ronald Kaplan. Dr. Kaplan noted weakness of grasp in her right hand with sensory deficit in the second, third, and fourth fingers, and two-thirds of range of motion in her neck. He recommended continued physiotherapy, including over-the-door pulley traction and intermittent cervical traction. He opined that she had been totally disabled since November 1989. (R. at 304–05.)

Finally, Redeker saw Dr. Michele Masi, a neurologist, for a consultive examination in May 1992. Dr. Masi found Redeker to be suffering from degenerative changes at the C5–6 with joint space narrowing and encroachment of the neuroforamen and from radiculopathy with reflex and sensory loss and some signs of weakness. Dr. Masi also noted that Redeker exhibited a limited range

of motion in the neck, tenderness in the right paracervical and trapezius region, right upper extremity weakness due to pain, and diminished pin perception in the right shoulder and right thumb. Dr. Masi opined that Redeker's ability to sit, stand, and walk were not impaired and that she could lift between fifteen to twenty pounds. (R. at 313–15.)

Redeker herself testified at the hearings before the ALJ that she has been in pain and has had limited mobility throughout this period. She indicated that she found it difficult to keep her neck up, that she was bedridden much of the time, and that she largely did (and could do) nothing more than watch television or read. Redeker also said she can only stand for twenty or thirty minutes at a time and can drive only for short distances. She claimed to use a hydroculator three or four times per day and a cold pack twice per day. She was also still taking medication (Vicodin and Lodine) for pain and inflammation as of the second hearing.

Redeker's roommate, Carol Ligotti, also testified to Redeker's incapacities. Ligotti asserted that she had to do virtually everything for Redeker—including all household chores and shopping, preparing Redeker's hydroculator packs, and even drawing baths for her—because it was painful for Redeker to do so much as lift a carton of milk.

## II. DISCUSSION

 The Social Security Act, 42 U.S.C. § 423 (1988), provides for the payment of social security benefits to eligible individuals who are disabled and unable to engage in any substantial gainful employment. In reviewing cases such as this, the court does not make *de novo* determinations. *Lizotte v. Secretary of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir.1981). Resolution of conflicts in the evidence and the ultimate determination of disability is for the Commissioner. *Tremblay v. Secretary of Health & Human Servs.*, 676 F.2d 11, 13 (1st Cir.1982). Therefore, the court will uphold the Commissioner's decision as long as substantial evidence in the record supports her conclusions, *Lizotte*, 654 F.2d at 128, and she reaches her decision utilizing the correct legal criteria,

*DaRosa v. Secretary of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir.1986).

 Contrary to Redeker's contentions, the ALJ correctly assessed her claims of pain under the standards set forth in *Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19, 23 (1st Cir.1986), and 20 C.F.R. §§ 404.1529 and 416.929 (1994). First, the ALJ recognized that Redeker's condition can produce some level of pain. He then focused on the credibility of Redeker's subjective claims of pain. Although Redeker insists that the ALJ impermissibly based this determination solely on the objective medical evidence, that was only one factor in the ALJ's reasoning. In assessing complaints of pain, *Avery* and 20 C.F.R. §§ 404.1529 and 416.929 instruct the ALJ to consider the objective medical evidence, medical history, doctor's statements, functional limitations, aggravating factors, methods of treatment, and claimant's activities. In this case, the ALJ analyzed the medical reports and concluded that Redeker's claims of pain were out of proportion to the objective medical evidence. The ALJ then evaluated the other relevant factors. Specifically, the ALJ noted the absence of physician-imposed functional limitations on Redeker, her increasing activities such as her studies in television production, her diminished and inconsistent use of medications, and her demeanor and bearing at the hearing itself. Although whether a claimant can sit through a hearing cannot form the sole basis of an ALJ's assessment of the claimant's complaints of pain, the claimant's demeanor at the hearing can certainly provide one element of the ALJ's credibility determination. *See Ortiz v. Secretary of Health and Human Servs.*, 890 F.2d 520, 524–25 (1st Cir.1989) (per curiam); *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir.1980). Moreover, the fact that a claimant presents testimony about her lifestyle does not prevent an ALJ from finding all or part of the story incredible. *Frustaglia v. Secretary of Health and Human Servs.*, 829 F.2d 192, 195 (1st Cir.1987).

 Substantial evidence in the record supports the ALJ's conclusion that Redeker's pain was not as severe or disabling as she alleged. Redeker's failure to keep physical

therapy appointments or fill certain prescriptions, and long gaps between medical treatment all point to a lesser degree of pain than that to which she testified. This, coupled with her discontinuation of most medications, provided sufficient evidence to allow the ALJ reasonably to conclude Redeker's pain was not as severe as she claimed.

■ The Commissioner also applied the correct legal standard in determining that Redeker can return to her past work or other light or sedentary work. Redeker claims that the ALJ incorrectly relied on the residual functional capacity ("RFC") assessment of a non-treating physician, Dr. Masi, rather than a treating physician. *See* 20 C.F.R. §§ 404.1519i and 416.919i (1994). The ALJ, however, specifically noted the inadequacies of Redeker's treating doctors as consultative physicians, particularly their refusal to place specific limitations on her ability to sit, stand, walk, and lift. Redeker also argues that internal inconsistencies appear in Dr. Masi's report that diminish its value. However, this court may not substitute its judgment for that of the ALJ in resolving conflicts in the evidence as long as substantial evidence supports the ALJ's conclusion. *See Lizotte*, 654 F.2d at 128.

■ Substantial evidence similarly supports the ALJ's decision that Redeker could work at her past work or numerous other jobs in the national economy. Along with the RFC and the functional assessments of two consultative physicians, the ALJ had available and relied on the report of the vocational expert who testified that Redeker could perform numerous jobs despite her moderate neck pain. Redeker argues that the ALJ incorrectly relied on the Medical–Vocational Guidelines because they did not account for nonexertional limitations such as Redeker's pain. That contention assumes, however, that the ALJ erred in finding Redeker's subjective complaints of pain overstated and that her pain was moderate at most. Because that finding was based on substantial evidence, the Court concludes that the ALJ acted appropriately in determining Redeker could perform the jobs that the vocational expert testified were open to a person who suffered from a moderate degree of pain.

■ The Court is not unmindful that the ALJ's opinion generally betokens a slightly aggressive reading of the evidence against Redeker. Moreover, as Redeker points out, the ALJ occasionally placed a somewhat misleading spin on the evidence. For example, the ALJ described Redeker as a full-time student as of the time of her second hearing (R. at 26), when in fact she was only attending a one-and-one-half hour class twice a week. (R. at 116.) Similarly, he reported that "[p]ossible (but very slight) weakness was detected in the right biceps" by Dr. Masi during her examination. (R. at 37.) Dr. Masi actually reported, "The right upper extremity had a diffuse give-away weakness because of pain. There may have been some slightly greater weaknesses in the right biceps and deltoid." (R. at 314.)

Nonetheless, these scattered instances neither establish that the ALJ rendered an improper decision nor demonstrate that he was biased against her in a way that materially affected the disposition of her case. The ALJ did not substitute his own judgment for any uncontroverted medical diagnoses, *cf. Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir.1994), nor did he deny Redeker's benefits simply because the medical evidence did not directly support her complaints of pain. *Cf. Avery*, 797 F.2d at 22–23. Rather, he analyzed an inconclusive medical record in light of legitimate concerns about Redeker's credibility and found her not disabled. Whatever different conclusions a fact-finder could plausibly reach about Redeker's own claims of pain and her and her roommate's description of her daily activities, this Court may not substitute them for those of the ALJ so long as the ALJ's findings are supported by substantial evidence. *Pagan v. Secretary of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam), *cert. denied*, 484 U.S. 1012, 108 S.Ct. 713, 98 L.Ed.2d 663 (1988).

Accordingly, the decision of the Commissioner to deny Redeker benefits is AFFIRMED.

SO ORDERED.